HUGGINS, administrator, *v.* HUGGINS.

1. The intent of the parties is the true test of a partnership, which, therefore, may be created by a contract giving rights or imposing obligations differing from those from which the law ordinarily infers a partnership.

2. Even if there be no " joint ownership, use, and enjoyment of the profits of

undivided property," but the parties in a joint undertaking mutually regard their arrangement as a partnership, the law will take them at their word, and apply the rules applicable to that relation.

3. If one who originally contributed no capital, but was to receive a part of the profits as compensation for his services, permits a portion of such profits to remain in the business as firm assets, he thereby acquires a joint ownership in the undivided property, and becomes a partner within the meaning of the last clause of Civil Code, § 2626.

4. A surviving partner is entitled to the possession of the firm assets, but is bound speedily to convert the same into cash, pay the debts, and, within a reasonable time, come to an accounting with the administrator of the deceased partner.

5. If a surviving partner bought new goods, sold on credit, and continued the business beyond the time allowed by law for winding up the partnership affairs, the administrator of the deceased partner would be entitled to an injunction against such illegal acts, if it appeared that the surviving partner was insolvent, or that there was other reason to apprehend loss to the estate.

6. Receivers are not appointed as matter of right, but to preserve rights; and even if the surviving partner continue the business beyond the time allowed by law, the court will not disturb his possession if it appear that he is solvent that the assets are not being wasted, and that he can comply with any final decree in favor of the deceased partner's estate.

7. If a surviving partner continues the business beyond the time allowed by law, the final account with the administrator should be stated as of the day when the settlement should have been made, the administrator being entitled, to the sum then due, with interest; or at his option he may take such principal sum with his proportion of the profits.

Argued January 20,—Decided February 10, 1903. Rehearing denied March 4, 1903.

Petition for receiver etc. Before Judge Russell. Clarke superior court. December 15, 1902.

The administrator of J. H. Huggins Sr. sought to have a receiver appointed to take possession of property belonging to his intestate, and alleged to be wrongfully retained by H. T. Huggins. The administrator claimed that J. H. Huggins Sr. had employd his son, H. T. Huggins, as clerk in a crockery business in Athens, giving him twenty-five per cent. of the profits as a salary for his services; that J. H. Huggins Sr. subsequently opened a store at Lula, and, to keep the two branches separate and distinct, conducted that at Athens under the name J. H. Huggins & Son, giving H. T. Huggins fifty per cent. of the profits as compensation for services, but creating no joint ownership, use, or enjoyment in the profits of undivided property; that if the new name under which the business was conducted and the fact that H. T. Huggins was liable for debts made the latter a partner, he was such only as to third persons, and therefore not a surviving partner entitled to possession of the assets

as against the administrator of J. H. Huggins Sr. H. T. Huggins admitted that in the beginning of the business he was only to receive a part of the profits, but he insisted that the use of the name " J. H. Huggins & Son," a division of the profits, and his liability for losses and debts made him a partner, not only as to third persons, but also as between himself and his father; that his father regarded him .as a partner in the fullest sense of the term, as was evidenced by his letters. On February 7, 1888, J. H. Huggins Sr., in a letter to H. T. Huggins, said, among other things: " With regard to interest and debts in our partnership business, half of all the debts made are yours and half mine, and when we close we will divide them, good or bad as may be. With regard to interest, if I draw more from the store than you, I will pay interest on all I overdraw; and if you draw more than I do, you do the same. I will allow all the profits that I can to remain, and you allow yours to remain except a living, and there will be no interest due you or me; all the interest, if any, will belong to the firm. I would not continue a partnership in a business where all the profits were taken out every year by either partner, unless there was a surplus not needed to run the business. I do not know how much I have drawn, as I have not looked after that; you have it all so it can be settled. I presume there is no profits in the store except what is in goods and debts, and you and I will of course share them pro [rata when we close the business. I have no right to take any money out of that firm to pay outside debts or to invest in outside speculations; neither have you, strictly speaking. I have been forced to pay several debts that the store owed, of course, and will have to pay, sooner or later, some more, the debts drawn or made against Lula store." In a letter dated March 12, 1888, J. H. Huggins Sr. wrote to H. T. Huggins: " The only difference I see between us is that you desire to take stock once a year and credit up share of profits and charge interest on them. As joint partners in store I furnish the capital and you run the business for equal shares of the profits. Of course you did not agree to furnish the capital to run, neither did I agree to enlarge the capital; hence, if you allow your profits to remain in stock, and I allow an equal number of profits to remain in stock, it is just and equitable to us both; and if I draw more than my share of profits or you draw more than yours, interest should be paid by the one that overdraws; and this would be just to both. If I were to allow

you to make a balance on the books once a year and credit up the profits then by a trial balance, and follow it up five years and pay you interest, I would not have a dollar in store by that time. Further, the profits that are made *are in stock and debts* and not in cash, and you get as much benefit as I do from it, and I am as badly injured by leaving it in the business as you are; for it is mutual and joint partnership, not like a man working for a salary; but as a stock company of two parties, and both partners take their profits in the product that is made in the business." On August 31, J. H. Huggins Sr. wrote H. T. Huggins, among other things, that " our contract is for you to run the business and divide the profits equally; and if you want to borrow money to run the business, that is to increase the capital, of course that is all right, and let the business pay the interest. That, of course, would entitle you to interest on any or all money you may have in the business, and would be right. . . . Until your name appeared as partner your risk was your labor and mine my capital."

The administrator, while insisting that J. H. Huggins Sr. and H. T. Huggins were not partners inter se, claimed that even if the latter should be treated as a member of the firm he had violated his obligations as surviving partner by continuing the business, purchasing new stock, incurring debts, and selling the old and the new goods for cash and on credit, besides incurring danger of loss from bad debts and from depreciation in stock; that the administrator needed the amount due from the business, with which to pay debts and make distribution; that H. T. Huggins had unreasonably delayed to wind up the partnership business, and had refused to come to a settlement, or render an account. II. T. Huggins insisted that he was ready to make a settlement, but that the administrator would not deal with him except as a clerk; that the administrator demanded possession of the stock, worth about $14,000, in which H. T. Huggins had about $6,000 arising from profits left by him in the business; that he (H. T. Huggins) had offered to divide the property in kind, and was then ready to come to an accounting; and that he had made a profit of about $5,000 by continuing the business since the death of J. H. Huggins Sr. The chancellor refused to appoint a receiver, and the administrator excepted.

*W. M. Smith* and *Strickland & Green*, for plaintiff.

*T. S. Mell*, for defendant.

LAMAR, J. (after stating the foregoing facts.)   1, 2.   The con-
tentions of the plaintiff in error make it necessary to compare two
sections of the Civil Code :  § 2629, which provides that " A joint
interest in partnership property, or a joint interest in the profits
and losses of the business, constitutes a partnership as to third per-
sons," and § 2626, which provides that a partnership " may arise
from a joint ownership, use, and enjoyment of the profits of undi-
vided property."    Whether this last section means a " joint owner-
ship of undivided property " with a joint enjoyment of the profits
thereof, or only a joint ownership, use, and enjoyment of the profits
of such undivided property (*Martin* v. *Tidwell*, 36 *Ga.* 344; *Camp*
v. *Montgomery*, 75 *Ga.* 796; *South Carolina & Ga. R. Co.* v. *Au-
gusta Southern R. Co.*, 107 *Ga.* 181), it must in either case refer
to the status during the continuance of the business and prior to
the dissolution.    For it may be that by virtue of the provisions of
the articles of partnership one partner is to receive no part of the
capital on dissolution, and yet, being one of the firm, he would be
a joint owner during the continuance of the business.    So that what
they are to receive when the concern is wound up does not necessa-
rily afford any test as to their relation.    But this provision of the
code as to joint ownership is not intended to change the general rule
of law (*Powell* v. *Moore*, 79 *Ga.* 528), nor as an exhaustive statement
as to how partnerships arise inter se.    The real test is the intention
of the parties.    If there has been no express agreement, or if proof
of an express agreement is inaccessible, the law will infer a partner-
ship from certain facts connected with a joint undertaking.    But
there is no need for inference when the parties have themselves
entered into an express contract on the subject ; and hence the
importance of the first clause of § 2626, which provides that " a
partnership may be created either by written or parol contract."
When it is thus created, there need not necessarily be anything said
about joint ownership of property, or profits, or joint liability for
losses.    There is, by virtue of the express agreement, a partnership
having the incidents set forth in the articles, with others fixed by
law as a consequence of the relation.    One need not have all of the
usual rights of a partner ; he can be a partner in spite of his agree-
ment that he is to have no share in the profits.    He can be a part-
ner although he shares the profits but is by the other partner guar-
anteed against loss.   *Hendrick* v. *Gunn*, 35 *Ga.* 234.   One may

put in all the capital and stipulate that it shall be returned intact on the dissolution ; the other may contribute only skill, experience, and labor, and yet, during the partnership, may be one of the joint owners, entitled to the right of winding up the concern, even though he is to receive none of the capital on the final accounting. And it can' be easily imagined that on the day a non-trading partner- ship is created and articles are signed between doctors, attorneys, brokers, or real estate agents, there might be no capital, no assets, no debts, no profits, no joint ownership in anything, and yet the contract has created a partnership inter se, which could in the line of the business create debts binding on each member as well as on the firm. While we do not mean that merely calling an association a partnership can make it such when none of the essential elements. of a partnership are present, yet, where there is a joint undertak- . ing, a union of labor or a union of capital and labor, or where some of the essential elements of a partnership are present, and not one party, as in *Thornton* v. *McDonald,* 108 *Ga.* 4, but both distinctly agree among themselves to become partners, there is no reason why the law should not take them at their word, even though that agreement falls short of the facts from which the law would other- wise have inferred a partnership. See Hazzard *v.* Hazzard, 1 Story, 371 ; Couch *v.* Woodruff, 63 Ala. 466 ; Runnels *v.* Moffat, 73 Mich. 189 (7); Neihoff *v.* Dudley, 40 Ill. 407 ; Beecher *v.* Bush, 45 Mich.. 188.

If this proposition be true, we think that there is nothing confusing or inconsistent between the two sections of the code. (1) If one only receives part of the profits as a salary or compen- sation for services, he is not a partner. Civil Code, § 2629. (2) If he actually retires from the firm and fails to give notice thereof as required by section 2634, he is confessedly not a partner, but is estopped from denying that he is liable as such to certain creditors. (3) If by reason of the terms of the contract he is not a partner inter se, but has a joint interest in the property which he has em- barked in the business, and which may be increased or decreased as a result thereof, he is liable to third persons. (4) If under the contract he is not a partner inter se, but is jointly interested in profits and losses, he is treated as a partner so far as third per- sons are concerned, by virtue of his express agreement to pay the losses. He assumed that relation to outsiders, and is liable to them

whether he be called a partner or not. (5) A joint interest in profits and losses is generally indicative of a partnership inter se, but not necessarily so, and therefore the law will not from this fact alone infer a partnership between the parties. (6) A joint ownership, use, and enjoyment of the profits of undivided property is a fact from which the law will infer a partnership inter se. Civil Code, § 2626. (7) Where there is a joint undertaking, a partnership may be created by a contract in which the rights and obligations of the partners inter se, and as to the partnership property, profits, and losses, are different from those fixed or implied by law. It being, then, possible to create a partnership having elements short of those from which the law would infer a partnership, and as it appears from the letters of J. H. Huggins Sr. that he considered his son a partner and treated him as such, and the son likewise claiming to have been a partner, there is no reason why the court should refuse to recognize him as such, even if it was not stipulated that he should have "a joint ownership, use, and enjoyment of the profits of undivided property." · Both parties having treated the son as a partner during· the lifetime of the father, the courts must treat the son as a surviving partner when the firm has been dissolved by death.

3. But there was evidence from which the court might have found that H. T. Huggins had contributed to the assets of the firm. The answer of the defendant that he was entitled to interest on the profits left in the business may mean that these sums were left; or it may be construed, in the light of the letters from his father, that the son was entitled to interest because J. H. Huggins, Sr. had overdrawn, and therefore the other partner was entitled to interest on an amount equal to such overdraft, according to the plan indicated by the correspondence. There was enough in the evidence to show that if H. T. Huggins left profits in the business and neither party overdrew, there would be no interest due to either. "All the interest, if any, would belong to the firm." In other words such profits so contributed would be capital employed by the firm, and each partner by leaving an equal amount of such profits in the business would not be entitled to interest thereon as a debt, but the earnings resulting from the use of such capital would belong to the firm, and be divided between them on any subsequent account. This will appear from the statement of facts and the letters of J. H.

Huggins Sr., in which he objected to all of the profits being withdrawn, and desired his son to leave in the business all the latter's share of earnings except what was necessary for actual living expenses. If either partner overdrew his account, he was to pay interest on such overdraft, and such interest was to be the property of the partnership and not of either of them. H. T. Huggins claimed that he had contributed some six thousand dollars out of his profits. If the facts show it was a loan, he is to that extent a creditor; but if it was a contribution to capital, according to the terms proposed by the letters of J. H. Huggins Sr., the son should be treated to that extent as a joint owner of capital of this firm, and would measure up to the terms fixed in the last clause of Civil Code, § 2626.

4, 5. There having been evidence as to intent, and also of contribution, from which the trial judge could have found that H. T. Huggins was a partner, and the judge having so construed the testimony, it was then proper to determine what were his power and liability as survivor. Primarily the surviving partner is liable for the debts, and for that reason the law gives him the right to administer the partnership assets. Civil Code, § 2647, 2648. It charges him with the duty of paying the firm debts, of winding up its affairs, and of coming to an accounting with the administrator of the deceased partner within a reasonable time after the dissolution. After such reasonable time for settlement he has no right to continue the business in the name of the old firm, or in his own name; and if he buys new goods or incurs new debts, or makes sales for cash and on credit, he does so at his own risk. He is liable for the debts incurred, and for the losses arising from bad debts or from a depreciation of the property. The administrator would be entitled to an injunction against such illegal acts, and also to the appointment of a receiver to hold the assets until a final accounting, provided the surviving partner is insolvent or there are any other peculiar circumstances from which there may be danger of loss or irreparable injury to the estate, or a likelihood that the amount due the administrator on a proper accounting will not be forthcoming. In this case there is no allegation of insolvency. It appears that the surviving partner has offered to settle; that the administrator, insisting that he is a mere clerk in possession of assets, refuses to deal with him on the basis of a surviving partner, and demands

possession of all the books of account, documents, merchandise, and assets. The surviving partner insists that to the extent of six thousand dollars he has an interest in these assets either as partner, or creditor; that he is one of the heirs, and has purchased the interest of other heirs, whereby he has become the owner of five sevenths of the estate of J. H. Huggins Sr. It also appears that since the death of J. H. Huggins Sr., the surviving partner has made a profit out of the business of about five thousand dollars. While the ownership of the former interest of the other heirs, solvency, and making profits were no answer to the administrator's contention that the business should have been wound up within a reasonable time, it does show that there has been no waste, and that there is no such danger of loss or irreparable injury as would require the summary remedy of injunction and receiver. Civil Code, §§ 4901, 4902, 4904.

The administrator further insists, that as the law fixes one year as a reasonable time within which the estate of a decedent should be wound up, the same period is prima facie sufficient for a surviving partner to collect the assets, pay the debts, and settle with the representative of the deceased partner; and in the absence of facts showing that more time was required, we think the analogy is fair, and one year ought to be enough to enable a survivor to come to an accounting with the administrator. The refusal of the administrator to consent to a division in kind is no excuse for the surviving partner's failure to wind up the partnership affairs within the time required by law. If he desired to secure the right of a division in kind, he should have paid the debts, and, on the refusal of the administrator to appoint an appraiser, he could have applied to the ordinary to name assessors, under the provisions of the Civil Code, § 2647. If the administrator had sought to enjoin such action, or otherwise prevented the surviving partner from pursuing a remedy or enforcing a right granted to him by law, this might have afforded sufficient excuse for the delay.

6. The plaintiff in error insists that the unreasonable delay of two years was of itself sufficient cause for the appointment of a receiver, regardless of any question of solvency or irreparable injury. There are cases which hold that where a partner, without sufficient excuse, continues the business beyond the reasonable time allowed by law for winding up the partnership affairs, a re-

ceiver may be appointed.   Miller *v.* Jones, 39 Ill. 54; George on Partnership, 358, 359 ; High on Receivers, § 532.   In a contest between partners, where both are entitled to the possession of the assets, a receiver will be more readily appointed than in ordinary cases.   Here the surviving partner is alone entitled to the possession ; and no matter how much to blame he may be, the other party has no right to the possession as against a survivor, and in fact only insists upon the appointment of a receiver because of the threatened danger to the estate and the unreasonable delay by the survivor.   There are few, if any, cases, under the equity practice of this State, in which receivers are appointed as a matter of right; they are appointed to preserve rights; and no matter how strong the apparent equity of the complainant may be, if there is no necessity for a receivership, the courts will not change the status until final decree.   A preliminary hearing on an application for receiver and injunction is not intended to be a means of trying title.   Civil Code, § 4917.   Ordinarily it should require a verdict and final judgment to oust one of his land or other property.   A receivership is not intended to be better than an action of ejectment or trover, and to take property from a defendant claiming title and right of possession.   Where such defendant is himself solvent and there is no reason to doubt that he will be able to answer the final decree in the case, and there are no other special circumstances requiring the interposition of the extraordinary remedies, his solvency makes the court treat him as a quasi receiver, the property being regarded as in safe hands.   If later the solvency of this quasi receiver should become doubtful, or if waste or danger of probable loss should appear, the chancellor would interfere and·grant appropriate relief.

7.  Any improper demand or refusal by the administrator was no excuse·for a surviving partner continuing the business beyond the reasonable time allowed by law ; and, while·we do not think a receiver should have been appointed, the accounting prayed for in the petition should be speeded, and the auditor should be required to state the account as of the date when the surviving partner should have settled with the administrator.   The latter, on such accounting, will be entitled to the amount due the estate on that date, with interest ; or at his option the administrator may elect to take profits instead of interest.   The facts that the survivor is sol-

vent, that the estate can not be made liable for debts or losses sustained, and that the administrator may either collect principal and interest, or principal and profits, are reasons why the estate of the deceased partner can not suffer; and the chancellor did not err in refusing to appoint a receiver.

*Judgment affirmed.　By five Justices.*