### 21108. McMILLAN v. SHEPARD-NILES CRANE AND HOIST CORPORATION.

DECIDED MAY 12, 1931.

*Maddox, Matthews & Owens,* for plaintiff in error.
*Wright & Covington,* contra.

LUKE, J. Shepard-Niles Crane and Hoist Corporation filed a declaration in attachment against Y. A. Dyer and D. W. McMillan as a copartnership doing business under the name and style of Dyer & McMillan, alleging: that the partnership, by their

agent Southern Metallurgical Company, ordered from plaintiff two cranes and hoists for a stipulated price; that the agency of the Southern Metallurgical Company was not disclosed until after shipment of the goods, but that said company was duly authorized by the partnership to place the order with plaintiff; that the machinery was manufactured and shipped in accordance with the order, and Dyer and McMillan refused to receive and accept the same, and plaintiff was forced to pay freight, demurrage, expense of moving the machinery, and storage; and plaintiff prayed judgment for $2,097.81. D. W. McMillan individually filed an answer in which he denied the existence of the partnership with Dyer, and denied all liability for the indebtedness sued for. Dyer interposed no defense. The case was tried before a jury, evidence was introduced in behalf of plaintiff and defendant, and the judge directed a verdict in favor of the plaintiff in attachment and rendered judgment thereon. The defendant, D. W. McMillan, in his bill of exceptions, assigns error on the admission of certain evidence and on the direction of the verdict in favor of plaintiff in attachment.

The evidence, in brief, developed that Dyer and McMillan entered into a contract with one Beatty by which they paid Beatty $5,000 and bound themselves to spend $15,000 in building a high-pressure pipe machine embodying what was known as the "Beatty patents," and in consideration of these expenditures Beatty gave them the option to purchase his patent rights. Dyer and McMillan then entered into an agreement between themselves by which McMillan obligated himself to furnish $10,000 for the purpose of building the machine to manufacture pipe under the Beatty patents, and Dyer obligated himself to personally supervise the building of the machine and the demonstration thereof, though the actual construction of the machine seems to have been undertaken by the Southern Metallurgical Company, of which Dyer was president and his son-in-law Gilmore was vice-president and general manager. Gilmore was the sole witness for the plaintiff, though there was considerable documentary evidence. The evidence discloses that the two cranes and hoists shipped by plaintiff were essential to the construction of the machine to be built by Dyer and McMillan.

The first assignment of error complains that after the contract between Dyer and McMillan had been offered in evidence, and Gilmore had testified that he had a conversation with Mr. Dyer and

with Mr. McMillan with reference to developing the soil-pipe machine, and they had requested him to help work on it, the court permitted counsel for plaintiff in attachment to ask the following question and permitted the witness to answer it: "Please state what statement was made by Dr. McMillan or Dyer at that time with regard to their interest in the development of this property." Counsel for Dr. McMillan objected, on the ground that the contract was in writing and that any statement about the contract would be irrelevant and hearsay. The court overruled the objection, stating, "I am not letting it in for the purpose of showing what the contract is, but as a circumstance leading up to the partnership." In the light of Gilmore's conversation with Dyer and McMillan, and the question and answer as shown by the record, the court's ruling was correct.

The second assignment of error is on the direction of a verdict. In dealing with this the question as to the existence of a partnership between Dyer and McMillan was argued at length by counsel for both sides. In fact almost the entire brief of each is upon this question. Under the record we do not think that the existence of this partnership is essential to a recovery by plaintiff, as hereinafter shown, and we do not pass on that question; but in view of the argument of counsel and the record we deem it not amiss to call attention to the following facts and authorities pertaining to the existence of the partnership between Dyer and McMillan: In the contract with Beatty and his associates, McMillan and Dyer were the parties of the second part, and the contract receipts for "$5,000 cash in hand paid by parties of the second part to parties of the first part," and the option on the Beatty patents is given to parties of the second part, McMillan and Dyer. In the contract between Dyer and McMillan it is provided that if Dyer fails to comply with his agreement, McMillan shall then own the machine and equipment acquired, but that if Dyer performs his part of the contract "the said machine and/or machines and equipment purchased with the funds provided hereunder shall be owned jointly by the parties in the same proportion as their respective interests in and to the profits derived from the sale or other disposition of the said Beatty high-pressure pipe process or Beatty patents." Does the record show that the common interest of Dyer and McMillan was confined to profit alone? They had joint ownership

of the option to purchase the Beatty patents; joint obligation to develop the machine to produce under these patents; a joint interest in whatever profits might arise from the venture; they jointly contracted with Beatty and paid him $5,000; they contracted with each other; Gilmore discussed the purchase of the cranes and hoists, the subject-matter of this suit, with both Dyer and McMillan. As applicable to these facts see Civil Code, § 3158; *Nellis* v. *Green,* 36 *Ga. App.* 684 (137 S. E. 843); *Smith* v. *Hancock,* 163 *Ga.* 222 (136 S. E. 52); *Clegg* v. *Lyons,* 30 *Ga. App.* 482 (118 S. E. 432), and cases cited in the opinion, page 485; *Butler* v. *Frank,* 7 *Ga. App.* 655 (67 S. E. 884).

As before stated, we consider it expedient, under the circumstances, to call attention to the foregoing facts and authorities in reference to the existence of a partnership, even though the reference to them be considered obiter dictum. However, under the record, the existence of a partnership between Dyer and McMillan is not essential to a recovery by the plaintiff. The record shows that McMillan was the only defendant who filed an answer, and this answer, denying the existence of a partnership, was not sworn to. Section 3166 of the Civil Code is as follows: "Partners suing or being sued in their firm name, the partnership need not be proved unless denied by the defendant, upon oath, on plea in abatement filed." See also *Stricklin* v. *Crawley,* 1 *Ga. App.* 139 (3) (58 S. E. 215); *Crockett* v. *Garrard,* 4 *Ga. App.* 360 (2d) (61 S. E. 552); *Eaves* v. *Field,* 8 *Ga. App.* 69 (2) (68 S. E. 556); *Wiggins* v. *McCalla,* 20 *Ga. App.* 739 (2, 2a) (93 S. E. 231). All of these authorities and others hold in substance that it is unnecessary to prove a partnership unless it be specifically denied *on oath.* Furthermore, the record shows that McMillan, the only defendant answering, was the man who was to furnish the necessary implements for promoting the project, in that he was to furnish the money for buying such implements; that he was to pay the expense up to $10,000; that he was the only one who was obligated to buy anything; that Dyer's only obligation in reference to the prospective machine was to supervise and superintend the construction and promotion of the machine; that Gilmore ordered the cranes and hoists with the knowledge and consent and at the direction of McMillan. Not only the contract between Dyer and McMillan, but also letters from McMillan showed that he understood that

he was to do all the buying through Gilmore or Dyer, and Gilmore and Dyer were to keep records of what they bought with the money furnished by McMillan. Gilmore testified: "At the time these hoists were ordered Dr. McMillan knew they were ordered. He told me to order those machines and all other equipment as soon as possible." McMillan did not take the stand to deny this. Since the firm was sued, and only McMillan answered, and he did not deny the partnership under oath, but did plead non est factum, and the evidence showed that he did order the goods through Gilmore, a verdict for McMillan would have been contrary to law. See *Ransom* v. *Loyless,* 49 *Ga.* 471; *Hirsch* v. *Oliver,* 91 *Ga.* 554, 561 (4) (18 S. E. 354); *Francis* v. *Dickel,* 68 *Ga.* 255 (2); *Comolli* v. *Nat. Cash Register Co.,* 40 *Ga. App.* 683, 684 (151 S. E. 517). In the last-named case this court certified to the Supreme Court the following question: "The plaintiff brought suit upon a promissory note against B. and C. Garage, and alleged in its petition that the defendant was a partnership composed of John J. Bullard and C. Comolli. There was no declaration against Bullard and Comolli as individuals, and no allegation that they had held themselves out as partners, or that the plaintiff had been led to believe from any acts or representations of theirs that they were partners. Both Bullard and Comolli filed timely pleas of 'no partnership,' and upon the trial the evidence demanded a finding in favor of the pleas. However, the evidence authorized a finding that Comolli was the sole owner of the B. and C. Garage, and that he as an individual owed the debt sued for. When the plaintiff offered evidence tending to show that the debt sued for was not owed by the alleged partnership, but was owed by Comolli only as an individual, counsel for Comolli offered timely objections thereto on the ground that, under the allegations of the petition as to the partnership, the evidence was inadmissible, for the reason that no judgment could be rendered against Comolli as an individual under the suit as laid. The objections were overruled and the evidence admitted. The petition was not amended. The trial resulted in a verdict and judgment in favor of the plaintiff against Comolli only. 1. Under the above stated facts was the verdict contrary to law? 2. If the verdict was not contrary to law, did the court err in admitting the evidence tending to show that the debt sued for was owed by Comolli as an individual (there being no amendment

to the petition) ?" In answer the Supreme Court, all the Justices concurring, said: "The verdict rendered on the state of facts set out in the certified question was not contrary to law." See *Comolli* v. *Nat. Cash Register Co.*, 169 *Ga.* 409 (150 S. E. 551), and cases cited. The ruling in that case was followed in *Colson* v. *Ellis*, 40 *Ga. App.* 768 (151 S. E. 654).

Under the foregoing authorities and the facts of the instant case, whether there was or was not a partnership between Dyer and Mc-Millan, the court properly directed a verdict in favor of the plaintiff in attachment.

*Judgment affirmed. Broyles, C. J., and Bloodworth, J., concur.*