23666. McMILLAN *v.* GILMOUR.

Decided August 13, 1934.

Maddox, Matthews & Owens, for plaintiff in error.

Wright & Covington, contra.

Jenkins, P. J. ■ The line of demarkation between an employment and a partnership, where one of the parties contributes services rather than capital, and is merely to receive a share in the profits, is close and often depends on differences in the particular facts, rather than rules of law. *Doss* v. *Ragan*, 135 *Ga.* 850 (70 S. E. 662); *Brandon* v. *Conner*, 117 *Ga.* 759 (45 S. E. 371, 63 L. R. A. 260); *Callaway* v. *Waxelbaum Co.*, 128 *Ga.* 508 (57 S. E. 762); *Sankey* v. *Columbus Iron Works*, 44 *Ga.* 228, 234; *Buckner* v. *Lee*, 8 *Ga.* 285; *Clegg* v. *Lyons*, 30 *Ga. App.* 482, 485 (118 S. E. 432); *Allgood* v. *Feckoury*, 36 *Ga. App.* 42 (135 S. E. 314);

*Sauls* v. *Scott*, 46 *Ga. App.* 243, 244 (167 S. E. 311); *Nellis* v. *Green*, 36 *Ga. App.* 684, 688 (137 S. E. 843); *Hall* v. *Stone*, 11 *Ga. App.* 269 (75 S. E. 140). But a joint interest in the partnership property together with a joint interest in the profits constitutes a partnership as to third persons. Civil Code (1910), § 3158; *Floyd* v. *Kicklighter*, 139 *Ga.* 133, 138 (76 S. E. 1011); *Smith* v. *Hancock*, 163 *Ga.* 222 (2, *a*), 231 (136 S. E. 52); *Gray* v. *Blasingame*, 110 *Ga.* 343, 345 (35 S. E. 653). The fact of partnership may be established by parol. The intention of the parties may be disclosed not only from the language of a particular writing, but from the facts and circumstances of the entire course of dealing between the parties. *Atlantic Orchard Cor.* v. *Caldwell*, 41 *Ga. App.* 205 (2) (152 S. E. 298); *Faulk* v. *LaGrange Cigar Co.*, 15 *Ga. App.* 568 (84 S. E. 93).

On the question of partnership in this suit, the instrument of December 4, 1928, which is relied upon by the contesting defendant as showing that no partnership existed, but that the parties merely agreed to form a partnership in the future upon the performance of a condition or the happening of a contingency, provided that the contesting defendant would furnish "an additional sum of" $10,000 to complete the erection, building and demonstration of a machine for manufacturing high-pressure centrifugal cast iron pipe; that the other defendant would personally supervise this work, which was to be completed within three to six months; that if that defendant failed to do this, the defendant furnishing the money would be under no obligation to furnish other funds, and the machine and equipment acquired with his monies would belong to him; but if the other defendant completed the machine as required, the machine and equipment would be "owned jointly by the parties in the same proportions as their respective interests in and to the profits derived from the sale or other disposition of the said Beatty high-pressure pipe process or Beatty patents." Although this instrument provided that the party not furnishing the money for the machine would have only a contingent or conditional joint interest in the "machine and equipment," it expressly recognized that the parties already owned "respective interests in and to the *profits*" from their joint interest and ownership in the *patents*. The writing expressly refers to the "*option*" on the patents, which the defendants had jointly acquired. The reference to "an *additional* sum of"

$10,000 also indicates that the contesting defendant, who furnished this amount, had already expended other monies in the joint enterprise. Since the instrument obviously neither created nor covered the entire course of dealing between the parties, the court did not err in admitting in evidence the original option contract of March 14, 1928, by which they jointly acquired their interest in the patent rights; or the later agreements extending the time of the option; or the parol evidence, which explained the transaction. Nor did the court err in admitting the contract signed by the defendants, dated April 7, 1928, in which they expressly stated that they "are *copartners* in agreement with [the patent owners] for the outright purchase of the soil-pipe rights . . covered by the Beatty patents on the manufacture of centrifugal pipe," that by reason of the furnishing of funds by the defendant contesting the partnership, he was to receive a 60 per cent. "interest," and by reason of the rendering of valuable services by the other defendant, he was to receive a 40 per cent. "interest." If "the parties in a joint undertaking mutually regard their arrangement as a partnership, the law will take them at their word, and apply the rules applicable to that relation." *Huggins* v. *Huggins,* 117 *Ga.* 151 (2), 155 (43 S. E. 759). The defendant denying partnership, however, contends that this contract was immaterial, because it referred only to "soil" or sewer pipe, and not to high-pressure water pipe, such as was dealt with in the last contract of December 4, 1928. Although the contract of April 7th does refer to "soil-pipe rights" under the patents, it refers also to the "agreement" with the owners of the "patents on the manufacture of centrifugal pipe." Only one option contract was in evidence, and that contract, by which the defendants acquired their joint interest in the subject-matter and the profits, expressly covers a "high-pressure centrifugal machine" and process, does not limit the joint interest of the parties to "soil" or sewer pipe, and uses almost the same language as the contract of December 4, 1928, in describing the pipe therein dealt with as "high-pressure centrifugal cast-iron pipe." The contract of April 7th is also the only instrument in evidence to show what were the "respective interests" of the parties, which are referred to in the last contract. That contract being ambiguous, the prior writings and other parol evidence explanatory of its meaning and of the intent and relation of the

parties were admissible. See *National Manufacture & Stores Corporation* v. *Dekle,* 48 *Ga. App.* 515 (173 S. E. 408).

Moreover, the evidence was also admissible, or the defendant can not be heard to complain of its admission, because of the averments in his own answer. While the answer denied any partnership, and stated that the defendant was merely to furnish the capital, it expressly set up that the two defendants "had an agreement whereby they acquired from [the owners] a license to manufacture *soil or sanitary cast-iron pipe* under what is known as the Beatty patent for manufacturing such pipe;" that they "also had an *option* from [the owners] for the *manufacture of high-pressure water or gas cast-iron pipe under a patent known as the Beatty patent;*" that under the agreement between the defendants, he was to furnish to the other defendant "a certain amount of money for the building and demonstration of the machine for manufacturing or making *soil or sanitary cast-iron pipe, and also* for the demonstration of a machine for manufacturing *high-pressure water* or gas *cast-iron pipe, both machines covered by the Beatty patent or patents,* and that [the other defendant] was to look after the building and demonstration of the said *machines;*" and that he furnished to the other defendant "the money that he agreed to furnish for the aforesaid *purposes.*" The defendant, therefore, can not complain of the admission of evidence which either explained or tended to rebut these averments.

Under the evidence, the original relationship of the parties was not one of employer and employee, or a contract for a future partnership because their last agreement gave to one of them merely a conditional or contingent future interest in the uncompleted machine and equipment therein described, which was to be acquired with the monies supplied by the other; but all the evidence indisputably shows that there was a partnership between the parties both inter se and as to third parties with regard to the main enterprise, in which the machine and equipment were only a subsequent incidental development. They already had a joint interest in the patents and the profits. As was said, although perhaps only as obiter, in *McMillan* v. *Shepard-Miles Corporation,* 43 *Ga. App.* 281 (158 S. E. 602) (a suit by a different creditor against the same defendants, involving the issue of partnership under similar evidence, although it was found unnecessary to decide that question),

the defendants had "joint ownership of the option to purchase the Beatty patents, joint obligation to develop the machine to produce under these patents, a joint interest in whatever profits might arise from the venture, they jointly contracted with [the owners] to pay [them] $5000, they contracted with each other;" and it may be added, they also in their first agreement with each other expressly designated themselves as "copartners." On the question of partnership in the instant case, the direction of a verdict for the plaintiff was, therefore, not erroneous.

 A partnership, unless otherwise agreed, is one at will. Among other ways prescribed by sections 3161 and 3162 of the Civil Code, it "may be dissolved at any time by any partner on giving three months notice to his copartners," or it may be dissolved "by the extinction of the business for which it was formed." See also 47 C. J. 1115, 1116 (§§ 777, 779). "The dissolution of a partnership by the retiring of an ostensible partner must be made known to creditors and to the world." Civil Code, § 3163. "A dissolution puts an end to all the powers and rights resulting from the partnership to the partners, except for the purpose of a general account and winding up the business. As to third persons, it absolves the partners from all liability for future contracts and transactions, but not for the transactions that are past." § 3164. Even before such a dissolution and notice to creditors, a partner may relieve himself of liability for *future* transactions by "express notice of dissent to the person about to be contracted with," although otherwise, under the statute, "all the partners are bound for the acts of any one, within the legitimate business of the partnership." § 3180. In the instant case the evidence showed without dispute that the joint business or enterprise between the defendants was extinguished by the complete loss of all rights in the patents by termination of their option of purchase either early in May, 1929, according to oral testimony for the contesting defendant, or on May 14, 1929, as indicated by an entry on the last extension agreement with the patent owners. There was oral testimony for the defendant that his attorney in fact notified the plaintiff by telephone on the Tuesday after May 3, 1929, that the option giving the patent rights had expired, that the defendant was no longer concerned with the matter, and would do nothing else therein. The plaintiff, while testifying that he did not recall such

a conversation, after being cross-examined both as to the conversation and as to the expiration of the option rights, testified that, "so far as I know, it did not occur." Letters from the defendant or his attorney in fact, written to the plaintiff after the alleged conversation, did not refer thereto or to the alleged statements in the conversation. Accordingly, a jury question was presented as to whether and when the plaintiff received the alleged oral notice of dissolution by telephone, either on the Tuesday after May 3, 1929, or on or after May 14, 1929, the date of termination of the option according to the written entry, or at any other time prior to the first letter, which was written to the plaintiff on May 24, 1929. If the jury should find that such an oral notice was given by the contesting partner, it would have terminated the authority of the plaintiff, either acting for himself or under the direction of the other partner, to continue his work for the partnership for the salary and money advances claimed, so that as to items of his account after such notice the defendant would not be liable. If the jury, however, should find that the oral notice was not given, no other notice to the plaintiff appears to have been given until May 24, 1929, making recoverable all items antecedent to that date. But the evidence shows without dispute that on May 24, 1929, the defendant's attorney in fact, by letter from Brewton, Alabama, notified the plaintiff at Cave Spring, Georgia, and sent a copy of the letter to the other partner, stating that the contesting defendant was merely to furnish $10,000 for the development of the machine, and did not "authorize any one to order anything for the machine in his name or for his account," and he denied liability, *"personal or otherwise,"* for machinery mentioned in the letter. The plaintiff admitted that he had received this letter. Therefore, irrespective of whether or not this letter in itself constituted a sufficient notice of the *dissolution* of the partnership, it was sufficient to put the plaintiff on notice that the defendant's only obligation was to furnish $10,000, that no one had any authority to contract any indebtedness in his name or for his account, and that he was not liable for the obligations stated, personally or otherwise. Under section 3180 of the Civil Code, this notice relieved the defendant of liability for items of account contracted by the plaintiff after his receipt of the letter. It is also uncontroverted that the contesting defendant, on June 25, 1929, wrote to the plaintiff a letter, in which he referred

to a previous letter from the plaintiff addressed to "the McMillan-Dyer partnership," and in which he informed the plaintiff that "there was and is *no partnership.*" The plaintiff did not deny receipt of such a letter, but admitted that he had received one stating in effect that there was no partnership. Thus, the plaintiff had this additional written notice, which required a verdict for the defendant as to all items of the account incurred after June 25, 1929. Furthermore, both on June 22 and 26, 1929, the plaintiff by letter informed the defendant that he was resigning his position and work with the corporation, at whose plant and in whose name the machine or machines for constructing pipe under the patents were being constructed, and that such resignation was effective July 15, 1929, the letter of June 26 stating, "this is my last effort to pull things through up here for [the company] *or for any one else.*" The reference to the company might have indicated that the resignation related only to its business or work, if there had not been the express reference to "any one else." As to items accruing after July 15, 1929, the plaintiff was, therefore, not entitled to recover, for this additional reason. There are certain items in the account, amounting to $170, which were incurred from April 27 through May 4, 1929, before any question arises as to any sort of notice to the plaintiff; and as to that amount a verdict was demanded for the plaintiff. The question of liability for items amounting to $220, accruing from May 5 to 24, 1929, the date of the defendant's first letter denying liability and disapproving any authority to contract indebtedness, should have been submitted to the jury, for the reasons stated, for their determination as to whether and when the plaintiff was orally notified of the dissolution of the partnership, and what, if any, items occurred after such notice, if the jury found that it was given. As to this $220, it was therefore error to direct a verdict for the plaintiff. The items accruing after May 24, 1929, through the last items of August 31, 1929, amounted to $1,039.44. As to this amount, for the reasons stated, it was error to direct a verdict for the plaintiff, a verdict being demanded for the contesting defendant under the evidence. As to $522.58 of the $1,039.44, which smaller amount represents items incurred after June 25, 1929, the date of the letter expressly informing the plaintiff of the nonexistence of the partnership, a verdict was demanded for the defendant, for this additional reason.

As to $259.28 of the $1,039.44, which less amount was incurred on August 31, 1929, after the plaintiff's resignation had taken effect, a verdict was demanded for the defendant, for this further reason. The fact that, after the plaintiff's resignation, or after any of the notices to him that the contesting defendant would not be liable, that his connection with the matter had ended, or that no partnership existed, the plaintiff was not, as he testified, also expressly told to discontinue his work, or the fact that the other defendant told him to continue, would not render the contesting defendant liable, since the plaintiff had already been sufficiently notified, and there is no proof that, after the dissolution of the partnership and the notices to the plaintiff, the former partner had any authority from the contesting defendant to incur new indebtedness in behalf of the former partnership.

For all the reasons stated, it was error, except as to $170 of the principal amount directed for the plaintiff with proper interest thereon, to direct the verdict in favor of the plaintiff for the $1,419.24 sued for and $389.10 interest; the defendant being entitled to the admitted set-off of $1000 with $336.65 interest thereon, as found in the verdict.

*Judgment reversed.* *Stephens and Sutton, JJ., concur.*