## GEORGIA PERUVIAN OCHRE COMPANY *v.* CHEROKEE OCHRE COMPANY *et al.*

1. The petition as amended set forth a cause of action, and the court erred in dismissing the same on general demurrer.

2. The petition was not subject to any of the special demurrers urged.

No 2163. SEPTEMBER 30, 1921.

Equitable petition. Before Judge Tarver. Bartow superior court. June 19, 1920.

The Georgia Peruvian Ochre Company filed a petition in Bartow superior court, naming the Cherokee Ochre Company and Thompson, Weinman & Company as defendants. The petition, as amended, set forth substantially the following allegations: The plaintiff is the owner of the minerals upon land lot No. 531, and the Cherokee Ochre Company is the owner of the minerals upon land lot No. 478, the latter lot being adjacent to and immediately north of lot 531, and both being in the fourth district and third section of Bartow county. Thompson, Weinman

& Company hold a lease from the plaintiff, which gives to them the right to extract the barytes ores from lot 531 at a royalty of $1 per ton. Thompson, Weinman & Company also hold a lease from the other defendant, the Cherokee Ochre Company, which gives to them the right to extract the barytes ores from lot 478 (the adjoining lot immediately north of lot 531) at a royalty of .35 cents per ton. A dispute has arisen between the plaintiff and the Cherokee Ochre Company as to the location of the line which separates the two lots. The plaintiff and the Cherokee Ochre Company employed separate surveyors to run the true line, the plaintiff's surveyor locating the line north of the line located by the surveyor employed by the Cherokee Ochre Company, the two lines being fifty-four feet apart on the east and seventy-six feet apart on the west sides. The plaintiff contends for the northern and the Cherokee Ochre Company for the southern line as the true dividing boundary. The petition sets forth the bearings, monuments, and distances of the two lines, and these are also shown on the map made by plaintiff's surveyor, which is attached as an exhibit to the petition. Thompson, Weinman & Company are extracting barytes from the disputed area. In the lease between plaintiff and Thompson, Weinman & Company it is provided that in the event any barytes is mined by the lessee near a boundary line of the leased premises, and a dispute arises with any adjacent landowner as to the location of such a line, the lessee shall furnish to the lessor monthly reports of the barytes taken and shipped by them from the disputed area, and deposit the royalties thereon to the credit of the lessor in a named bank, " there to remain on deposit until it is determined to whom such royalties belong." In pursuance of this provision of their lease from plaintiff, Thompson, Weinman & Company have deposited in a bank in Cartersville, to the credit of the plaintiff, the sum of $1767, representing the royalties at the rate of $1 per ton on ore mined by Thompson, Weinman & Company in the contested area to the date of the filing of the suit. This deposit, under the terms of the contract, is not subject to check by the plaintiff, but is to remain in bank " until it is determined to whom the same belongs." The Cherokee Ochre Company claims this sum of money, and royalties on all barytes that may be mined by Thompson, Weinman & Company in the tract in question. Plaintiff and the

Cherokee Ochre Company have been unable to agree upon the ownership of this sum of money, because of their disagreement as to the location of the true dividing line between their respective lots. The interests of Thompson, Weinman & Company are adverse to those of the plaintiff, in that, if it should be determined by the court that the line contended for by the Cherokee Ochre Company is the true line, Thompson, Weinman & Company will be called upon to pay to the Cherokee Ochre Company a royalty of only thirty-five cents per ton of barytes mined from the contested strip of land, instead of one dollar per ton to the plaintiff, as stipulated in the separate leases held by Thompson, Weinman & Company from the respective owners of the minerals in the two lots. The amendment to the petition merely alleges that the case is a proper one for decision by an auditor, and asks that an auditor be appointed and the case submitted to him. The prayers of the petition are: (1) for a decree establishing the line as contended by the plaintiff; (2) that plaintiff recover the sum of money on deposit with the Cartersville bank, and all undeposited royalties that may have accrued on barytes mined by the lessees within the undisputed area, and that plaintiff be declared to be entitled to the royalties on all barytes that may in the future be extracted from said area; (3) that an accounting be had from Thompson, Weinman & Company as to all ores mined within the area up to the time of the trial; (4) that the court ascertain the true line, in the event it should be found that neither of those contended for is correct, and enter a decree accordingly; (5) in the event it should be ascertained that the true line is between the two disputed lines, that the court apportion the royalties between plaintiff and the Cherokee Ochre Company in accordance with the quantities of barytes mined above or below the true line and within the area in question; that to this end Thompson, Weinman & Company be ordered to account for the tonnage mined by them from the different parcels of the disputed tract; that plaintiff recover from its lessee, at the stipulated rate, any undeposited royalties that may have accrued on barytes extracted south of the said intermediate line and within the said tract; (6) for general relief, and for process.

The defendants filed separate but identical demurrers, which were renewed, to the petition as amended. The grounds of the

demurrers, in substance, were: (1) No cause of action is alleged. (2) Plaintiff has an adequate and complete remedy at law, by processioning or ejectment. (3) The petition is multifarious, and sets up separate and distinct causes of action against separate and distinct persons. (4) There is a misjoinder of parties defendant, and a nonjoinder of the owners of the surface interests in the two lots. (5) The determination of the boundary line between the two lots will not alter the rights or duties of Thompson, Weinman & Company. (6) It does not appear from the petition that the Cherokee Ochre Company has made any demand on plaintiff for any portion or all the fund alleged to be deposited in the Cartersville bank to the credit of the plaintiff, and that plaintiff " is in possession, through deposit," of the royalties taken from the tract in dispute. (7) The petition is vague and indefinite (in the respects pointed out in the demurrers). (8) There is no allegation as to the location of any intermediate line, and defendants can not properly prepare to give evidence to the jury as to the true line, or anticipate what evidence relative to such possible line the plaintiff will produce at the trial. (9) There is no allegation showing any act or omission on the part of either of the defendants constituting a violation of any right of the plaintiff. The court by separate orders sustained each of the demurrers filed, and dismissed the petition. The plaintiff excepted.

*Neel & Neel,* for plaintiff.

*G. H. Aubrey* and *J. T. Norris,* for defendant.

GEORGE, J. " A demurrer to the whole bill should be overruled if any part thereof be sustainable." *Hudson* v. *Hudson,* 119 *Ga.* 637 (46 S. E. 874). But it is insisted that the petition does not allege any act or omission on the part of either of the defendants, constituting a violation of any right of the plaintiff, and that no judgment is prayed against either of the defendants, in that a declaratory judgment only is prayed. It appears that the lessee has deposited in bank to the credit of the plaintiff the sum of $1767, representing the royalties at the rate of one dollar per ton on ore mined by the lessee in the contested area to the date of the filing of the suit. The money thus deposited can not be withdrawn by the plaintiff, is not subject to its check, and the plaintiff is losing the use of the money and the interest thereon.

Under plaintiff's contract with its lessee the money on deposit is to remain in bank "until it is determined to whom the royalties belong." While the owner of lot No. 478 is not actively asserting any claim to the fund, it does assert that the ore was taken from its land, and that the money is its money. In the second prayer of the petition the plaintiff specifically prays for the recovery of the sum of money on deposit with the bank; and this must be construed as a prayer for judgment against the lessee, binding upon the Cherokee Ochre Company as the owner of the mineral interest in lot No. 478. Since the passage of the uniform-procedure act of 1887 (Civil Code of 1910, § 5406) a petition praying for only ordinary equitable relief is not demurrable on the ground that the plaintiff has a complete and adequate remedy at law. *Teasley* v. *Bradley,* 110 *Ga.* 497 (4) (35 S. E. 782, 78 Am. St. R. 113). But we do not agree that the plaintiff has a complete and adequate remedy at law. "Where the boundaries between two adjacent parcels of land, even when held by their respective owners under purely legal titles, have become confused or obscure, equity has, from an early period, exercised a jurisdiction to settle them. . . Courts of equity will not interpose to ascertain boundaries, unless, in addition to a naked confusion of the controverted boundaries, there is suggested some peculiar equity which has arisen from the conduct, situation, or relations of the parties." 4 Pomeroy's Eq. Jur. § 1384; see also 9 C. J. 266 et seq., and numerous cases cited in notes. While generally a superinduced equity must exist between the plaintiff and the defendant, and an equity in favor of the plaintiff against other persons will not give jurisdiction (Steed *v.* Baker, 13 Gratt. (54 Va.) 380), sufficient equitable grounds exist, in the peculiar circumstances of this case, to give jurisdiction to the court of equity. The prevention of a multiplicity of suits is recognized as a ground of equitable jurisdiction in cases of this character. 9 C. J. 268, and cases cited in note 87; 4 Pomeroy's Eq. Jur. § 1385, and cases cited in note 2. Our Civil Code (§ 4538) provides: "Equity will not take cognizance of a plain legal right, where an adequate and complete remedy is provided by law; but a mere privilege to a party to sue at law, or the existence of a common-law remedy not as complete or effectual as the equitable relief, shall not deprive equity of jurisdiction." In

*Scott* v. *Scott,* 33 *Ga.* 102, it was held: " A demurrer to a bill, on the ground that the complainant has a complete remedy at law, ought not to be sustained ·unless it appears that the complainant has a remedy at law that will secure his whole rights in a perfect manner, at the present time, and in the future." In the circumstances of this case, as set up in the petition, the case is peculiarly one for equity. It does not follow that the settlement of the disputed boundary by an action at law — either by processioning or by ejectment — will secure the plaintiff's " whole rights in a perfect manner." " All persons who are directly or consequentially interested in the event of the suit are properly made parties to a bill in equity, so as to prevent a multiplicity of suits by or against parties at once or successively affected by the original case." *Blaisdell* v. *Bohr,* 68 *Ga.* 56 (3). The plaintiff prays not merely for the location of the true boundary line, for judgment for the money already deposited in bank, but for an accounting in the event an accounting should be necessary. Not only is the lessee a necessary party to the suit, if full, complete, and adequate relief is to be granted plaintiff, but the lessee is a proper party defendant. If the ore belongs to the plaintiff, the lessee is liable at the rate of one dollar per ton; if the ore belongs to the Cherokee Ochre Company, the lessee is liable at the rate of thirty-five cents per ton. The lessee is therefore interested adversely to the plaintiff in the result of the suit. " A bill is not multifarious because all of the defendants are not interested in all of the matters contained in the suit. It is sufficient if each party has an interest in some matter in the suit which is common to all, and that they are connected with the others." *Brown* v. *Wilcox,* 147 *Ga.* 546 (4) (94 S. E. 993). It follows from what has been said that the petition was not subject to demurrer on the grounds that it set forth no cause of action, that plaintiff had an adequate remedy at law, that there was a misjoinder of parties defendant, or that the petition was multifarious.

Only one other ground of the special demurrer requires consideration. So far as the allegations of the petition disclose, the surface interest in both lots may be owned by the same party or by the respective owners of the mineral interests in the lots. If the surface owner be a person other than the persons own-

ing the mineral interests, he has no interest in the mineral estate. Where the ownership of the surface is in one person and the ownership of the minerals in another person, on the same tract, they each own a separate and distinct estate from the other. 1 Jones Real Property, § 537. It is agreed that if the surface interest in lot 531 is in one person and the surface interest in lot 478 is in another person, then and in that event the surface owners are proper parties to the action; but they are not indispensable parties. The surface owners are not directly interested in the minerals, and their interests would not be directly affected by a settlement of the dispute between the owners of the mineral interests. At least, so far as disclosed by the petition, the interest of the surface owners would not necessarily be affected by the granting of the relief sought in the action; and considering the allegations of the petition, the surface owners are not necessary parties to the action. We conclude, therefore, that the court erred in dismissing the petition upon demurrer.

*Judgment reversed. All the Justices concur, except Hill, J., absent.*