## SMITH et al. v. HANCOCK.

1. The petition set up a cause of action, and for this reason the court below did not err in overruling the general demurrer to the petition.

2. Since the passage of the uniform procedure act of 1887 (Civil Code of 1910, § 5406), a petition which sets forth a legal cause of action, though using terms appropriate to an equitable proceeding, is not demurrable on the grounds (a) that it sets forth no cause of action, (b) that there is no equity in the petition, and (c) that the plaintiff has an adequate remedy at law.

(a) Where in a written contract between Smith and Hancock it was recited that Smith owned a peach orchard, and was desirous of having Hancock furnish the necessary money to cultivate and operate the same, and wherein Hancock agreed to furnish all the money necessary to cultivate the orchard and to gather and market the peach crops grown in said orchard for the period of three years, all moneys advanced by Hancock to be a charge upon said orchard, for which Smith agreed to pay Hancock one half of the net proceeds of the peaches, the advances made by Hancock to be paid before any of said proceeds were to be divided between the parties, and whatever was left was to be divided equally between the parties, and wherein all advances made by Hancock to Smith for the purposes aforesaid were to be the personal indebtedness of Smith to Hancock, such contract created a partnership between them.

(b) A court of equity has jurisdiction in all cases of an accounting and settlement between partners.

(c) Equity jurisdiction of matters of account extends to mutual accounts growing out of privity of contract, where accounts are complicated, or wherein discovery or writ of ne exeat is prayed and granted, where the account is of a trust fund, accounts between partners and tenants in common, or where a multiplicity of suits would render a trial difficult, expensive, and unsatisfactory at law.

(d) The petition makes a case for equitable accounting; and for this

---

Accounts and Accounting, 1 C. J. p. 613, n. 62; p. 615, n. 76; p. 617, n. 4; p. 618, n. 10, 14; p. 621, n. 52; p. 623, n. 60; p. 624, n. 78; p. 635, n. 93; p. 636, n. 14.

Equity, 21 C. J. p. 315, n. 65, 67, 68; p. 316, n. 71; p. 416, n. 81; p. 424, n. 51.

Partnership, 30 Cyc. p. 349, n. 1; p. 360, n. 64; p. 379, n. 31; p. 380, n. 32; p. 710, n. 85; p. 716, n. 44; p. 732, n. 45; p. 734, n. 61.

Pleading, 31 Cyc. p. 290, n. 62, 65, 69; p. 329, n. 61; p. 616, n. 30.

Tenancy in Common, 38 Cyc. p. 80, n. 48.

reason this court has jurisdiction to determine all the assignments of error set out in the bill of exceptions.

3. The petition is not multifarious.

4. While the petition does not expressly allege that the plaintiff complied with the obligations assumed by him in his contract with the defendant J. A. Smith, it does in effect so allege.

(a) The petition was not lacking in equity because the plaintiff did not allege that he had paid or offered to pay to S. D. Smith the rents due him by J. A. Smith under the lease to the latter by the former, which lease had been assigned to the plaintiff, and did not allege that the plaintiff had paid to S. D. Smith the purchase-money due him by J. A. Smith under the bond for title from the former to the latter, which bond had been transferred to the plaintiff, the plaintiff in this case not undertaking to assert and enforce against S. D. Smith any rights under said instruments so transferred to him.

(b) Furthermore, as the plaintiff is seeking an accounting of all claims and counter-claims between him and the defendants, and as upon such accounting the plaintiff may not be due the defendants or either of them any amount, it was not necessary for him to allege that he had paid the demands which the defendants or either of them might hold against him.

5. In a proceeding to obtain an accounting, the plaintiff is not obliged to set out an itemized statement showing the amounts claimed by him, or to aver how much is due him upon an accounting; but all the petitioner in such a proceeding has to aver are facts sufficient to indicate that something will be found to be due him by the defendant.

6. The motion to dismiss the petition in this case on the ground that the plaintiff had made a written assignment of all his interest in the peach crop grown in the orchard during the year 1925, to a bank, to secure certain indebtedness of the plaintiff to the bank, was properly overruled, the plaintiff having sued to recover advances of money made by him to one of the defendants for the operation of the latter's peach orchard for the years 1923, 1924, and 1925. A motion to dismiss the whole petition should be overruled if any part thereof be sustainable.

No. 5367. November 20, 1926.

Equitable petition. Before Judge Malcolm D. Jones. Houston superior court. March 12, 1926.

On January 26, 1923, O. C. Hancock and J. A. Smith entered into an agreement in writing, wherein it was recited that Smith was the owner of a certain peach orchard, consisting of 26,000 bearing trees, upon a described tract of land, and that Smith was desirous of having Hancock furnish the money to cultivate, prune, and spray the trees, and to cover all other expenses necessary to the proper raising, fertilizing, spraying, and pruning the trees, and to pick, pack, haul, and deliver on board the cars the peaches grown on said trees. Whereupon it was agreed that Hancock was to furnish all the necessary money to plow, spray, prune.

fertilize, and properly cultivate said trees, and to pick, pack, crate, and deliver on board the cars all of the peaches grown in said orchard. For the furnishing of said money Smith agreed to pay Hancock one half of the net proceeds arising from the sale of the peaches. All money so advanced for the necessary cultivation of said trees was to be a charge against said orchard, and was to be first repaid before any of the proceeds from said orchard should be divided between the parties. Hancock was to have all the advances that he might make in the operation of said peach orchard first repaid to him, and whatever was left was to be divided equally between the parties. The contract was to cover the peach seasons of 1923, 1924, and 1925. After each peach season the parties were to have a complete settlement of the year's operation. All money advanced by Hancock to Smith, which did not go into the operation of the peach orchard, should be a personal indebtedness of Smith to Hancock. Hancock was to have the right at the expiration of the contract to renew the same on the same terms and conditions for an additional period of three years. Hancock was to have the right to cancel the agreement at the expiration of nine months from its date. All money advanced by Hancock to Smith, for the purpose of operating the peach orchard or otherwise, was to be the personal indebtedness of Smith to Hancock. Hancock filed his petition against S. D. and J. A. Smith, in which he alleged the foregoing facts, and denominated said contract one of partnership. He made the further allegation that said contract had expired by limitation, but that no final settlement had been made between the partners. S. D. Smith and J. A. Smith were in joint possession of the proceeds of the peaches grown during the season of 1925, amounting to $20,000 or other large sum, the exact amount of which was unknown to him. S. D. and J. A. Smith refused to give him information as to the assets of the partnership, or the amount of the proceeds of said peach crop, or the expenses incurred in gathering and marketing the same. On January 10, 1923, petitioner began to make advances to J. A. Smith, and as security therefor said Smith sold to petitioner certain personal property, a list of which is attached to the petition. At the same time said Smith transferred to petitioner all his rights under a certain lease contract between himself and S. D. Smith. A copy of this contract is attached to the petition.

After said transfers were made, petitioner made sundry advances which were secured by said transfers. Petitioner and J. A. Smith operated the peach orchard during the peach seasons of 1923, 1924, and 1925.

About the close of the peach season of 1924, differences arose between petitioner and J. A. Smith, and petitioner notified him that petitioner would exercise his option and discontinue said partnership and terminate the same, but said Smith finally prevailed upon him to continue, upon the agreement that S. D. Smith would handle the finances and repay petitioner the advances which he might make for the year 1925 out of the proceeds of the peaches raised for that year. In pursuance of this agreement, S. D. Smith received the proceeds of said peach crop, but, instead of holding the whole amount, placed the proceeds in the bank subject to the joint check of himself and J. A. Smith, contrary to the terms of said agreement. S. D. Smith has paid petitioner $4,206.40 out of the proceeds of the peach crop for the year 1925, and has failed to pay him the following advances made by him under the contract, and which were to be paid out of the first proceeds of peaches sold: Kingman & Everett bill, $136; spraying bill, $325; Dunlap Hardware Company bill, $110; Ware & Sammons bill, $130; and McCook Lumber Company bill, $57. Petitioner is unable to obtain from J. A. Smith or from S. D. Smith any accounting for the operation of said farm for the year 1925. J. A. Smith will not furnish him with an account of the operation of said farm for the years 1923 and 1924. In order that there may be a final settlement of said partnership, it is absolutely necessary that there be a full accounting, so that, after petitioner has been repaid the amount he has advanced, his share of the common assets may be ascertained and paid to him. J. A. Smith is contending that he is entitled to be paid a salary of $1,500 for each peach season before there is any division of profits, and that petitioner should be charged with $2,000 which said Smith claims Avondale Fruit farm overcharged said partnership. Why he should be required to make up said overcharge petitioner can not understand, but J. A. Smith so contends, and has notified S. D. Smith of his claim for salary. There are many other matters of settlement and accounting upon which petitioner and J. A. Smith disagree, and

which items of difference S. D. Smith has no power under the contract to resolve or settle. S. D. Smith is a mere stakeholder, and no settlement is possible between petitioner and J. A. Smith under which S. D. Smith can pay out the funds in his hands until there has been an accounting under the direction of a court of equity, and the respective interests of petitioner and J. A. Smith have been ascertained. The records of said partnership have been kept by J. A. Smith, but petitioner shows that the balance due him for the operations for the year 1923 amounted to $6,621.91 or more, that the amounts advanced by him for the year 1924 amounted to $15,878 or more, in addition to which petitioner paid $645 for crates for the year 1924, and an approved bill of M. A. Smith amounting to $875, or a total of $24,019.91 for the years 1923 and 1924. From the best records obtainable, petitioner appears to have received from said partnership for said years a total of $12,055.16. For the year 1925 petitioner has advanced, for the purpose of making said crop $4,964.40, and has been repaid by S. D. Smith $4,206.40. J. A. Smith is indebted to petitioner for money loaned and for articles furnished him individually, and under a settlement between them these items of indebtedness should be taken into account. Petitioner is unable to set out such advances with any degree of definiteness, because J. A. Smith kept the records of said partnership and the accounts between petitioner and himself, and in such accounting the said Smith should be required to furnish a complete and accurate statement of all receipts and disbursements, and all claims and counter-claims against them. J. A. Smith is utterly insolvent. Petitioner prays that the partnership be dissolved; that the defendants be required to come to account, under the principles of equity, with him, and especially with reference to receipts and disbursements of said partnership made by either or both of the defendants; that an accounting be had in this proceeding, under the principles of equity, of all claims and counter-claims between petitioner and the defendants, and especially between petitioner and J. A. Smith; that a receiver be appointed to take charge of all of the assets of the partnership; that the defendants be enjoined from making any disposition of any of the assets of the partnership; and that process issue.

The lease contract between S. D. Smith and J. A. Smith, referred to in the petition, was dated November 22, 1917. It em-

braced a described tract of land in Houston county, containing 275-1/4 acres. The term of the lease was for nine years, commencing January 1, 1918. The annual rental to be paid for the first four years was $619.86, and for the remaining five years was to be $836.48. The lessee was to keep the premises in repair, pay all taxes thereon, and keep the buildings insured, in addition to the rental to be paid. The lessee was to have the right to purchase said described real estate at the expiration of the lease, for the sum of $10,331, upon the payment of which the lessor was to execute and deliver to the lessee, his heirs, executors or administrators, good title. This option was to cease if the money was not paid within thirty days from the expiration of the life of the lease.

The defendants demurred to the petition, on the grounds: (1) that there is no equity in the bill; (2) that the petition does not set forth a cause of action against the defendants or either of them; (3) that the bill is multifarious in that there is a misjoinder of causes of action and a misjoinder of defendants; (4) that petitioner has an adequate and sufficient remedy at law; (5) that it does not appear from the petition that petitioner complied with the obligations resting upon him under said contract with J. A. Smith, and especially because it is not alleged that petitioner has paid the rents to S. D. Smith due under the lease contract, nor is it alleged anywhere that he had paid the payments due according to the bond for title; and (6) that the petition does not set out the sundry advances made by petitioner during the peach seasons of 1923, 1924, and 1925. The defendants demurred specially to the allegation in reference to the bills of Kingman & Everett and others heretofore stated, because the same were not itemized, being too indefinite. They demurred specially to the allegation as to advances made by petitioner for the years 1923, 1924, and 1925, for the reason that the same was too indefinite, and. the advances were not itemized. The court overruled the demurrer. The defendants made a motion to dismiss the petition, and on the hearing of said motion introduced in evidence a written assignment by Hancock, dated June 2, 1925, to the Fourth National Bank, of Macon, of all his interest in the peach crop then growing and being harvested upon the premises described in a contract between Hancock and J. A. Smith. This transfer was made

to secure certain notes given by Hancock to said bank. The court overruled the motion to dismiss. The defendants excepted to each of the rulings just stated.

*R. D. Feagin,* for plaintiffs in error.

*Jones, Park & Johnston,* contra.

HINES, J. 1. The petition sets out a cause of action. This will fully appear from the statement of facts preceding this opinion. This being so, the court below did not err in overruling the demurrer upon the ground that the petition set forth no cause of action; and this would render any further consideration of the case by us unnecessary, but for the fact that this court would have no jurisdiction to determine any of the assignments of error if the petition does not make a case in equity.

2. Does the petition make a case in equity? It was framed upon the theory that the contract between the plaintiff and J. A. Smith created a partnership, and was brought for the purpose of winding up the partnership affairs, and for an accounting between the partners. The defendants demurred to the petition, on the grounds that this contract created the relation of creditor and debtor between the parties, and, as the relief sought by the plaintiff can only be granted in the event that a partnership existed, that the petition was demurrable upon the grounds that it set forth no cause of action; and because the plaintiff had an adequate and complete remedy at law for the collection of the indebtedness of the defendants to the plaintiff. It does not necessarily follow that the petition was subject to these grounds of demurrer, if this contract did not create a partnership between the parties. Since the passage of the uniform procedure act of 1887 (Civil Code of 1910, § 5406), a petition which sets forth a legal cause of action, though using terms appropriate to an equitable proceeding, is not demurrable on the grounds that it sets forth no cause of action, that there is no equity in the petition, and that the plaintiff has an adequate remedy at law. *DeLacy* v. *Hurst,* 83 *Ga.* 223 (4) (9 S. E. 1052) ; *Teasley* v. *Bradley,* 110 *Ga.* 497 (4) (35 S. E. 782, 78 Am. St. R. 113) ; *Booth* v. *Mohr,* 122 *Ga.* 333 (50 S. E. 173) ; *Logue* v. *Gardner,* 152 *Ga.* 356 (110 S. E. 25) ; *Smith* v. *Manning,* 155 *Ga.* 209 (116 S. E. 813). A demurrer to the whole petition should be overruled if any part thereof be sustainable. *Hudson* v. *Hudson,* 119 *Ga.* 637 (46 S. E. 874) ; *Georgia Peruvian Ochre*

*Co.* v. *Cherokee Ochre Co.,* 152 *Ga.* 150 (108 S. E. 609); *Logue* v. *Gardner,* supra. If a petition alleges a cause of action, good either at law or in equity, it is not demurrable on the ground that it sets forth no cause of action. If it sets up an action at law, it is not subject to demurrer on the ground that there is no equity in the petition. *Smith* v. *Manning,* supra. If the contract between the plaintiff and J. A. Smith created a partnership, the plaintiff could, at the expiration of the term of partnership, bring an equitable petition against Smith for an accounting, where the latter was the active manager of the affairs of the partnership, kept its records, had possession of all of its assets, declined to give the plaintiff any information as to the affairs of the firm, and declined to come to any settlement with him. Equity jurisdiction over matters of account extends to accounts between partners. Civil Code (1910), § 4586. "It seems that no adequate remedy exists at law for one partner who seeks an account against his copartner." *Bennett* v. *Woolfolk,* 15 *Ga.* 213. A court of equity has jurisdiction in all cases of an accounting and settlement between partners. *Epping* v. *Aiken,* 71 *Ga.* 682; *Neel* v. *Morris,* 73 *Ga.* 406; *Bennett* v. *Smith,* 108 *Ga.* 466 (34 S. E. 156); *Huger* v. *Cunningham,* 126 *Ga.* 684 (56 S. E. 64); *Mathewson* v. *Reed,* 149 *Ga.* 217 (99 S. E. 854).

Did the contract between the plaintiff, O. C. Hancock, and the defendant, J. A. Smith, create a partnership? This contract recited that Smith is the owner of a certain peach orchard, which is fully described in said contract, and that Smith was desirous of having Hancock furnish the money to operate and cultivate the same, prune and spray the peach trees, and to pick, pack, haul, and deliver on board of cars all peaches grown on said trees. Hancock agreed "to furnish all the necessary money to plow, spray, prune and fertilize, and to properly cultivate said peach trees; also to furnish the necessary money to pick, pack, crate, and deliver on board of cars . . all of the peaches grown on said peach orchard." For the furnishing of said money Smith agreed "to pay to" Hancock "one half of the net proceeds arising from the sale of any and all peaches grown on the peach trees described as aforesaid. All of said money so advanced for the necessary cultivation of said peach trees . . to be a charge against said orchard, and to be first paid before any of the proceeds from said

peach orchard shall be divided between the parties, . . that is
to say," Hancock "is to have all the advances that he may make in
the operation of said peach orchard . : first repaid to him, then
whatever is left is to be divided equally between the parties." The
contract further provides that "all moneys advanced hereunder"
by Hancock to Smith "for the purpose of operating said peach
orchard, or otherwise, shall be a personal indebtedness to" Han-
cock by Smith. Hancock contends that this agreement creates a
partnership between him and Smith. Smith contends that it
creates the relation of debtor and creditor between him and Han-
cock. "A partnership may be created either by written or parol
contract, or it may arise from a joint ownership, use, and enjoy-
ment of the profits of undivided property, real or personal." Civil
Code (1910), § 3155. A partnership is not expressly created by
this instrument. There is no "joint ownership, use, and enjoy-
ment of the profits of undivided property." Hancock and Smith
did not own jointly the peach orchard which was to be operated
under this agreement. "A joint interest in the partnership prop-
erty, or joint interest in the profits and losses of the business, con-
stitutes a partnership as to third persons. A common interest in
profits alone does not." Civil Code (1910), § 3158.

Many efforts have been made to formulate a definition of part-
nership which at once would be both brief and comprehensive; but
owing to the great diversity between partnership agreements this
has been found difficult if not impossible. For a collection of these
definitions, see 30 Cyc. 349(1), note 1. No one of these defini-
tions has commanded universal approval and acceptance. An agree-
ment to share both the profits and the losses of a business has been
held in some cases to be conclusive evidence of a partnership.
Where such an agreement exists, the parties have usually been held
to be partners, many cases holding that the sharing of both profits
and losses is the true test of the existence of a partnership.
But an agreement to share profits and losses does not absolutely, as
a matter of law, create a partnership. If other circumstances in
the transaction show that the parties did not intend to create a
partnership, none is created. Such an agreement is merely prima
facie evidence of a partnership. 22 Am. & Eng. Enc. Law (2d
ed), 40. Joint ownership of the capital is a strong circumstance
tending to prove the existence of a partnership; but its absence is

not conclusive proof that there is no partnership. It is often difficult to determine whether a loan or advance of money for the use of which the lender is to have interest, and also a share in the profits, or a share in the profits in lieu of interest, creates the relation of partners or that of debtor and creditor. In some cases it has been held that if nothing appears but the furnishing of money by one of the parties and a sharing in the profits by both, a partnership may be presumed. But the point on which these decisions has generally rested is, whether the alleged loan was to be repaid at all events, or whether it was risked in the business, or was to be repaid only from it, and was subject to be lost in whole or in part, according to the results of the business. Whenever a joint enterprise, a joint risk, a joint sharing of expenses, and a joint interest in the profits and losses concur, a partnership exists. For a full discussion of this subject see *Floyd* v. *Kicklighter,* 139 *Ga.* 133 (76 S. E. 1011). A joint interest in partnership property is another and a very distinct thing from a common interest in the profits alone. The former interest is that of an owner, who has a right to dispose of the profits, and that makes him a partner; but a common interest in the profits confers no title jointly with the other and gives no power to control and dispose of the profits as owner. *Sankey* v. *Columbus Iron Works,* 44 *Ga.* 228. There may be a legal and valid partnership, although one or more of the parties are guaranteed by the others against loss. *Camp* v. *Montgomery,* 75 *Ga.* 795; *Brandon* v. *Conner,* 117 *Ga.* 759 (45 S. E. 371, 63 L. R. A. 260). In such case, however, there must be present the essentials which constitute a partnership; and it must be borne in mind that a partnership may exist as to third persons, when it would not exist between the parties. *Floyd* v. *Kicklighter,* supra. Generally, to constitute a partnership, there must exist risk, either of capital or profits. In most of the cases in which it has been held that a partnership may exist although one of the partners was guaranteed against risk by the others, there was a joint ownership in the partnership property or capital. In such cases there was a risk of loss of profits. Applying the above principles, how does the present case stand? Smith contributed the peach orchard. Hancock furnished the capital to operate the same. Both were to share equally the profits. Both were interested in the profits. If there were losses Smith bore them. If the

earnings equaled the expenses, he got nothing for his pains in managing the enterprise. So he was interested in profits and losses. For the use of his capital the plaintiff got nothing if there were no profits. So he had an interest in profits and losses. It follows, therefore, that this contract created a partnership between the plaintiff and J. A. Smith. For a case very much in point, see *Epping* v. *Aiken,* supra.

But, if this contract did not create a partnership, we think that the petition makes a case of equitable accounting. Equity has jurisdiction over mutual accounts growing out of privity of contract, of accounts which are complicated and intricate, where discovery is prayed and granted, where the account is of a trust fund, of accounts between partners and tenants in common, or where a multiplicity of suits would render a trial difficult, expensive, or unsatisfactory at law. Civil Code (1910), § 4586. Accounting is one of the ancient heads of equity jurisdiction. While this is true, a plaintiff may not come into equity to recover for demands which he may have, founded on account, where he has a plain and adequate remedy at law. *McLaren* v. *Steapp,* 1 *Ga.* 376. We think the facts of this case bring it within the jurisdiction of equity over accounts. While the petition does not allege that the accounts are complicated and intricate, this may fairly be inferred from the fact that the plaintiff is seeking an account of partnership transactions which ran through three years, and which involved large expenditures of money. Besides, under the contract between the plaintiff and J. A. Smith, the advances made by the plaintiff to Smith were to be a charge upon the orchard, that is, upon the peaches grown in the orchard by Smith, with advances of money furnished by the plaintiff. One purpose of the proceeding was to enforce this charge of the plaintiff upon the proceeds of the peaches grown during the year 1925, and which were in the hands of the other defendant, S. D. Smith. Furthermore, the plaintiff was seeking to enforce an express trust between him and S. D. Smith. By the close of the season of 1924 differences arose between the plaintiff and J. A. Smith, in reference to the management of the partnership affairs, and plaintiff notified Smith that he would exercise his right, under the contract between them, to discontinue said business and terminate the same. Smith finally prevailed upon the plaintiff to continue the business, upon the

understanding and agreement that S. D. Smith should handle the finances, and repay plaintiff for the advances which he might make for the year 1925, out of the proceeds of the peaches raised that year. Under said agreement S. D. Smith received the proceeds of the peach crop for that year, amounting to a large sum. Instead of holding said proceeds and applying the same to the payment of plaintiff for his advancements, S. D. Smith placed the proceeds in a bank, subject to the joint check of himself and J. A. Smith. In consequence of this situation, S. D. Smith can not pay the plaintiff for his advances to make the peach crop for 1925. Besides, J. A. Smith will not pay to the plaintiff one half of the net proceeds of the crop of that year. This proceeding by the plaintiff is to have an accounting from the defendants for this trust fund arising under the above agreement. In view of these facts the plaintiff does not have a full, complete, and adequate remedy at law; and for this reason he could resort to equity, because the accounts are complicated, because they are mutual accounts growing out of privity of contract, and because he was entitled to have an accounting for the trust funds in the hands of S. D. Smith, arising from the proceeds of the peach crop of 1925, and taken possession of by him under the agreement hereinbefore referred to. So we are of the opinion that the petition makes a case in equity, and that the court did not err in overruling the demurrer; and for this reason this court has jurisdiction to pass upon and determine all the assignments of error raised by the bill of exceptions.

3. The defendants further demurred to the petition, upon the ground that it is multifarious in that there is a misjoinder of causes of action and a misjoinder of parties defendant. While multifariousness is a ground of demurrer (Civil Code of 1910, § 5631), it is not favored by the courts. *Graham* v. *Dahlonega Gold Mining Co.,* 71 *Ga.* 296 (3). A petition is not multifarious because all of the defendants are not interested in all of the matters contained in the suit. It is sufficient if each party has an interest in some matter in the suit which is common to all, and that they are connected with the others. *Blaisdell* v. *Bohr,* 68 *Ga.* 56; *Cowan* v. *Nicholson,* 158 *Ga.* 425 (123 S. E. 681). An equitable petition, filed for a general account and settlement of a partnership, may embrace any object necessary to the complete adjustment of its

affairs. *Wells* v. *Strange, 5 Ga.* 22 (1) ; *City Bank of Macon* v. *Bartlett,* 71 *Ga.* 798. As S. D. Smith was in the joint possession with J. A. Smith of funds of said partnership, which plaintiff is seeking to have applied to his claims against the latter, he was a proper party.

4. The defendants further demurred upon the ground that it does not appear from the petition that the plaintiff complied with the obligations resting upon him under his contract with J. A. Smith, and especially because it is not alleged that petitioner has paid the rents due S. D. Smith under the lease contract, and because it is not alleged that he had made the payments according to the bond for title. The petition alleges that there is a balance due plaintiff of $6,621.91, on the advances made by him to J. A. Smith for the operation of the peach orchard for the year 1923, and that he advanced to Smith for the same purpose for the year 1924 $17,398.00, or a total of $24,019.91 for the years 1923 and 1924; that, from the best records obtainable, he has received from said business for said years a total of $12,055.16; that for the year 1925 he advanced, for the purpose of making the peach crop for that year, $4,964.40, and has been repaid by the said S. D. Smith $4,206.40. While he does not in so many words allege that he complied with the obligations assumed by him in his contract with J. A. Smith, he does to all intents and purposes so allege. For the purpose of the accounting sought in this proceeding, we do not think it was necessary for the plaintiff to have alleged that he had paid the rent due under the lease contract between J. A. Smith and S. D. Smith, nor the purchase-money due to S. D. Smith under his bond for title to J. A. Smith. Plaintiff is not asserting any rights under the lease and the bond for title, nor does it appear that under the transfers which he took of these instruments he undertook and agreed to pay the rents due under the lease, nor the purchase-money due under the bond for title. For these reasons we do not think that the petition in this case was demurrable because it does not appear therefrom that he had made these payments. Furthermore, as the plaintiff is seeking an accounting of all claims and counter-claims between him and the defendants, and as upon such accounting the plaintiff may not be due the defendants, or either of them, any amount, it is not necessary for his petition to allege that he paid demands

which the defendants might hold against him. *Wynne* v. *Fisher,* 156 *Ga.* 656 (119 S. E. 605).

5. The defendants further demur on the ground that the petition does not set forth the sundry advances made by petitioner to J. A. Smith for the purpose of operating the peach orchard during the years 1923, 1924, and 1925. They specially demur to the ninth paragraph of the petition, in which it is alleged that the plaintiff paid the Kingman & Everett bill, $136, spraying bill, $325, Dunlap Hardware Company bill, $110, Ware & Simmons bill, $130, and McCook Lumber Company bill, $157, because the same are not itemized. In a proceeding to obtain an accounting, the plaintiff is not obliged to set out an itemized statement showing the amount claimed by him, or to aver how much is due him upon an accounting. All the petitioner in such a proceeding has to do is to aver facts sufficient to indicate that something will be found to be due him by the defendant. *Gould* v. *Barrow,* 117 *Ga.* 458 (43 S. E. 702). For this reason, the court did not err in overruling these grounds of the demurrer.

6. The defendants made a motion to dismiss the petition, on the ground that the plaintiff, on June 2, 1925, had made a written assignment of all his interest in the peach crop then growing and being harvested on the premises described in the above contract between Hancock and J. A. Smith. This transfer was made to secure certain notes given by Hancock to said bank. The plaintiff was suing to recover advances of money made by him to J. A. Smith for the operation of the latter's peach orchard for the years 1923, 1924, and 1925. The bulk of his claim was for the two former years. Clearly, the assignment to the Fourth National Bank of his interest in the peach crop for 1925 would not defeat his right to recover advances made for the above purpose for the years 1923 and 1924. For this reason the court did not err in overruling the motion to dismiss the entire petition. Even if the motion had been limited to striking so much of the petition as sought to recover the advances made for the year 1925, we do not think that it should have been sustained.

7. Applying the above principles, the court did not err in overruling the demurrer to the petition, and the judgment of the court below is　　　　　*Affirmed.　All the Justices concur.*