## 13659. GNANN v. CAMERON.

The contract between the parties was properly construed as constituting a partnership.

DECIDED FEBRUARY 15, 1923.

Complaint; from Chatham superior court—Judge Meldrim. March 24, 1922.

*Alan S. O'Neal,* for plaintiff in error.

*Edwards & Lester,* contra.

BELL, J. W. J. Cameron brought a suit against G. B. Gnann for the alleged violation of a contract which the plaintiff contended was one establishing a partnership, and prayed for an accounting, and for the recovery of such sum as might be found thereupon to be due to him as a partner. The defendant contended that the contract was one merely of employment, by which the defendant was the employer and the plaintiff the employed. The court held that the contract established a partnership, and so

instructed the jury.  Upon the trial the verdict was in favor of
the plaintiff, the defendant's motion for a new trial was over-
ruled, and the movant excepted.  The sole question is whether the
court was right in the construction placed upon the contract.

Reciting that G. B. Gnann is-the sole owner of the Owl Drug
Company, and that W. J. Cameron is a licensed druggist, the
contract contains the following material stipulations:  Inventory
of stock, fixtures, and furniture to be taken as of the date of the
contract (April 1, 1921), and their commercial value to be charged
to Cameron.  All money " at present " in bank to credit of Owl Drug
Company to be placed at disposal of Cameron for the purpose of
defraying current expenses and for the purpose of offsetting the
outstanding indebtedness against the Owl Drug Company at such
time as the varied amounts of indebtedness become due and pay-
able.  That 50% of the net profits shall be payable to Cameron at
the end of each quarter, but in the meantime he is to receive the
stipulated amount of not less than $25 and not more than $35 per
week, " same to be considered a drawing account to be deducted
from the 50% net profits payable to Cameron as provided in this
clause."  That Cameron agrees, with the approval of the party
of the first part, to keep the stock value equal to its inventory as
of April 1, 1921, and at the expiration of the contract, should the
inventory be less, Cameron shall be chargeable to the extent of
50% of the "overage."  Certain purchases are to be made by
Cameron only by mutual consent of Cameron and Gnann.  Sales
and services of Gnann to constitute part of the gross business.  In-
ventories to be taken as of the first of each month, and should the
same be less than that of April 1, 1921, 50% of such amount shall
be chargeable to Cameron on memorandum, and if greater, he is
to be credited with 50% of the increase, " same to be counter-
balanced at the expiration of the time stipulation of this inden-
ture."  Checks to be drawn by Cameron countersigned by Gnann.
That Cameron shall render Gnann a monthly statement showing
" all items due and payable  :  .  and covering current stock, in-
stallments on fixtures, furnishings," etc.  The contract provides no
definite time for its expiration, but does provide, " this contract
to be considered void and subject to cancellation by either party
in the event same becomes disagreeable; in such event inventory
of stock and fixtures shall be taken and adjustments made accord-

39

ing to the stipulations of this indenture, based on inventory as of date taken."

It is clear that this contract not only provides that Cameron is to share in the profits, but that if the inventories show the capital invested to diminish, no matter to what extent, he is to share also in the resulting losses. The contract undoubtedly created a partnership.

*Judgment affirmed.   Jenkins, P. J., and Stephens, J., concur.*