A99A0020. PEACOCK et al. v. CHEGWIDDEN et al.
(518 SE2d 760)

McMURRAY, Presiding Judge.

Plaintiffs H. Dean Peacock and Peacock Architects, Inc. filed this action for damages, an accounting, and other relief against defendants William E. Chegwidden, Charles E. Holmes, Don R. Dorsey, and CDH Partners, Inc. ("CDH"; collectively "defendants"), alleging that in October 1993, plaintiffs and defendants "combined their separate architectural skills and formed a business entity in the nature of a

joint venture [('Partnership 1')] to market and perform architectural services within the health care industry." Subsequently, plaintiffs and defendants allegedly entered into another partnership ("Partnership 2"), "whereby revenues and profits from all parties' respective operations were to be pooled and shared on a predetermined basis." But that business was dissolved by the defendants, who "wrongfully retained certain net profits which were earned primarily as a result of Plaintiffs' efforts. . . ." Specifically, in January 1996, defendants advised plaintiffs of their desire to terminate the aforementioned business relationship, and in February 1996, plaintiffs and defendants entered into "a termination agreement [('the Dissolution Agreement')] to dissolve the . . . business arrangement." Plaintiffs sought $400,000 for the termination of this business relationship. All defendants admitted that plaintiff Peacock was an employee of defendant CDH, and further admitted that all parties discussed various alternative future business arrangements including plaintiff Peacock's possible purchase of stock in CDH from one of the shareholders, but denied the material allegations of a final agreement regarding a partnership or joint venture, or the terms of the eventual termination of their professional relationship. Defendant CDH counterclaimed for conversion of approximately $400,000 in payments to Peacock Architects, Inc. under existing contracts made on behalf of CDH. After discovery, defendants moved for summary judgment on the ground that the alleged partnerships, joint ventures, and so-called Dissolution Agreement lacked mutuality and so were unenforceable. The trial court agreed and granted partial summary judgment as to all theories of liability contained in the complaint before amendment. This appeal followed. *Held*:

1. "A partnership is an association of two or more persons to carry on as co-owners a business for profit." OCGA § 14-8-6 (a). "A partnership results from a contract, either express or implied. *Huggins v. Huggins*, 117 Ga. 151, 155 (1) (43 SE 759)." *Clark v. Schwartz*, 210 Ga. App. 678, 679 (436 SE2d 759). But the consent of the parties is essential to a contract, and "until each has assented to all the terms, there is no binding contract." OCGA § 13-3-2. Although the record in this case is replete with factual issues as to the existence of CDH&P, a division of CDH, as a joint venture (Partnership 1), we conclude there are no material fact questions about any subsequent partnership and its dissolution (Partnership 2 and the Dissolution Agreement), because plaintiff Peacock admitted there was no final agreement as to essential terms for each subsequent alleged contract.

2. In his deposition, plaintiff Peacock testified he did not need a lawyer's assistance to form a corporation, and that he understood a corporation was a separate legal entity. It was plaintiff Peacock's

understanding that Partnership 1 consisted of CDH&P, an unincorporated entity intended to do business as a division of the defendant professional corporation, CDH. Plaintiff Peacock understood he was "a principal and owner of activities related to the operations of CDH&P as an entity," and does not contend he thereby became an owner of defendant CDH. Plaintiff Peacock and the three principals of defendant CDH, defendants Chegwidden, Dorsey and Holmes, desired to "avoid the paperwork and the legal work [necessary] to form a separate legal entity." Plaintiff Peacock's duties were to pursue and manage operations related to that business, acting as the primary client contact. Any profits derived from CDH&P would be split based on a year-end evaluation of activity related to the principals involved with CDH&P, that is, how much activity from defendant CDH was "actually utilized in CDH&P work and expansion, and basically take a yearly look at that to determine a fair agreement on splitting profits." As of November 1, 1993, all individuals who had been employees of Peacock Architects, Inc. became employees of defendant CDH. CDH remained apart from CDH&P activities; there was no merger of the two. But in December 1993, defendant Dorsey and plaintiff Peacock, each signing as a principal of CDH&P, jointly submitted an architectural and engineering proposal to Kennestone Hospital on the stationery of defendant CDH. In his affidavit, plaintiff Peacock deposed that he received a "draw equivalent to that . . . [paid the individual defendants, and this payment] was understood to be a draw against profits," as plaintiff Peacock did not have any fixed annual compensation.

"The sharing of gross returns does not of itself establish a partnership." OCGA § 14-8-7 (3). But "receipt by a person of a share of the profits of a business is prima-facie evidence that he is a partner in the business," subject to certain exceptions. OCGA § 14-8-7 (4). In the case sub judice, evidence that plaintiff Peacock received a salary from defendant CDH is not determinative of the existence vel non of a joint venture in CDH&P. See *Gnann v. Cameron*, 29 Ga. App. 608, 609 (116 SE 338). This is especially true since defendant CDH held plaintiff Peacock out as a principal in CDH&P to prospective customers. "Whether the parties intended to make a contract [for a joint venture] is a question of fact. See 1 Corbin, Contracts, 474, § 106 (1950)." *Frey v. Friendly Motors*, 129 Ga. App. 636, 637 (200 SE2d 467). The evidence authorizes a finding that the division of the profits was not to be equal among all partners but would be pro rata, based on the parties' respective contributions. The trial court erred in granting summary judgment as to claims regarding this alleged oral joint venture, including the claim for an accounting among partners as authorized by OCGA § 23-2-70 (5). "Where a fiduciary relation exists, an accounting in equity is proper." *Atlanta Trust Co. v. Nat.*

*Bondholders Corp.*, 188 Ga. 761, 766-767 (2) (4 SE2d 644).

3. Partnership 2, an equal partnership, allegedly arose on January 1, 1995, when defendant Chegwidden approached plaintiff Peacock with a proposal to "fold both Peacock Architects and CDH&P under one entity, creating a single firm," in which stock would be owned by the existing stockholders or partners, defendants Chegwidden, Dorsey, and Holmes, plus plaintiff Peacock. Plaintiff Peacock understood he would buy the interest of defendant Holmes in CDH for $250,000, paying $25,000 per year out of plaintiff Peacock's share of a specified quarter's profits derived by the new entity. For the first five years, profits would be split four ways, then revert to a three-way split with defendant Holmes accepting a salary but no longer receiving a share of the profits. But in January 1995, the parties were "still resolving and working on specific details. . . ." There was never any writing memorializing the agreement, and the parties never simultaneously acknowledged any agreement. According to plaintiff Peacock, they had an agreement "knowing full well that the specific details of that agreement were yet to be materialized." Specifically, plaintiff Peacock did not yet know the future "legal structure as a whole of CDH, how the ownership would be transferred, what documents would need to be prepared. . . ." The distribution of stock was still outstanding because defendant Holmes "wanted to leave stock to his son[,] an employee of CDH." So as of January 1, 1995, plaintiff Peacock truly "had not 100 percent agreed" to pay defendant Holmes $250,000 as an equity contribution to become a 25 percent shareholder in defendant CDH. Plaintiff Peacock never did pay any portion of the $250,000 for his alleged partnership interest. As for the purchase of the assets of Peacock Architects, Inc., plaintiff Peacock submitted a proposed amount for the assets but never received an express acceptance. Rather, he believed defendants agreed to his proposal because they never raised any objections or concerns in response. CDH paid for a computer system and a phone system leased by Peacock Architects, Inc. In the fall of 1995, defendant Chegwidden proposed a two-tier structure whereby only senior partners such as defendants would share some profits devoted to Fund A, whereas all partners, including plaintiff Peacock, would share in some (undefined) fraction of profits devoted to Fund B. But plaintiff Peacock did not want to accept this proposal and communicated that fact to defendant Chegwidden. He confirmed he "hadn't agreed on any specific terms that [were] acceptable to [himself] and [defendants] at the same time."

It became apparent to plaintiff Peacock through the comments of defendant Chegwidden and CDH's attorney that defendant Holmes insisted the $250,000 price for his ownership interest meant "net proceeds to himself, thereby turning it into more like a $400,000.00 con-

dition that had to be somehow worked out. . . ." By January 1996, the parties still "did not get this resolved," and so conversation turned to "terminating [the second alleged] partnership agreement."

> The rule in Georgia is that the testimony of a party who offers himself as a witness in his own behalf at trial " 'is to be construed most strongly against him when it is self-contradictory, vague or equivocal.' " *Douglas v. Sumner*, 213 Ga. 82, 85 (97 SE2d 122) (1957); *W. & A. Railroad Co. v. Evans*, 96 Ga. 481 (23 SE 494) (1895). Where the favorable portion of a party's self-contradictory testimony is the only evidence of his right to recover or of his defense, the opposing party is entitled to a directed verdict. *Douglas v. Sumner*, supra.

*Prophecy Corp. v. Charles Rossignol, Inc.*, 256 Ga. 27, 28 (1) (343 SE2d 680). In the case sub judice, plaintiff Peacock's testimony that there was a complete partnership agreement as of January 1, 1995, is contradicted by his admission that he himself was not 100 percent committed to any particular deal. Moreover, it is undisputed that numerous material aspects of the proposed partnership were not finalized, including the exact percentage interest of plaintiff Peacock or the exact share of profits to be devoted to the fund in which he was to participate as a junior partner. "An agreement to reach an agreement is a contradiction in terms and imposes no obligation on the parties thereto." (Citations and punctuation omitted.) *Hartrampf v. C & S Realty Investors*, 157 Ga. App. 879, 880-881 (1) (278 SE2d 750). CDH's payment of installment loans undertaken by Peacock Architects does not raise an inference of partnership. OCGA § 14-8-7 (4) (E). In our view, plaintiffs' evidence shows only incomplete negotiations without a meeting of the minds as to all essential terms.[1] *Clark v. Schwartz*, 210 Ga. App. at 679, supra.

In the alternative, plaintiffs contend there is part performance under OCGA § 13-5-31 (3) to create a jury question.

> The part performance required by [OCGA § 13-5-31 (3)] must be essential to the contract, that is, required by its terms, such that a benefit is conferred upon the [defendant], with a consequent loss to the [plaintiff] which renders the court's refusal to enforce the contract tantamount to a fraud upon the [plaintiff].

---

[1] We express no opinion whether the oral ten-year purchase agreement, entirely executory, was unenforceable under OCGA § 13-5-30 (5).

*Hudson v. Venture Indus.*, 243 Ga. 116, 118 (252 SE2d 606). Moreover, the proponent of part performance must first establish that the contract is certain and definite in all essential particulars. *Valiant Steel &c. v. Roadway Express*, 205 Ga. App. 237, 239 (2) (421 SE2d 773).

In the case sub judice, the fact that defendant CDH retained $10,000 from a $39,000 bonus for plaintiff Peacock does not establish any part performance of the alleged partnership stock purchase agreement on the part of either plaintiff because that money remained in "limbo," neither tendered to defendant Dorsey nor accepted by him. Since that money can be turned over to plaintiff Peacock, it would scarcely amount to a fraud upon him because the court refused to enforce the non-existent contract. The trial court correctly granted partial summary judgment as to claims arising from the alleged Partnership 2.

4. Regarding the so-called Dissolution Agreement, once plaintiff Peacock knew defendants no longer wanted to pursue any sort of stock purchase or joint professional arrangement, he submitted to defendant Dorsey a proposed financial settlement and accounting. Defendants "agreed in principle" to go back to day one, analyzing the profitability of each joint project and then using the net result of that analysis as the termination funding. But as late as April 15, 1996, the parties "still had not gotten an accounting put together," and this was holding up the disbursal of funds held by CDH which plaintiff Peacock believed belonged to Peacock Architects, Inc. In late April or early May 1996, defendant CDH paid plaintiffs $50,000. In June, plaintiff Peacock received from defendants "some accounting that [utilized] assumptions on overhead conditions [reflecting] a different financial picture from [plaintiff Peacock's] perspective." Plaintiff Peacock "certainly disagreed with [those numbers]." Although defendants do not dispute there was an agreement that plaintiffs relocate, and that CDH would support plaintiffs' completion of the CDH&P projects through completion, there were only incomplete discussions about certain projects for which the full net profits would be paid over to plaintiffs versus certain projects "managed by [plaintiffs] that [CDH] might share . . . in the net profits," either equally or in some percentage.

In our view, this evidence shows only incomplete and ongoing negotiations as to the true financial result of the parties' intended disengagement, through offer and counteroffer. Consequently, the trial court correctly granted summary judgment as to any breach of the alleged express Dissolution Agreement. But plaintiffs' claim for the reasonable value of the professional architectural services they performed remains viable. See *Hudson v. Venture Indus.*, 243 Ga. at 117, fn. 1, supra. The trial court erred in granting summary judg-

ment as to any claim sounding in quantum meruit, arising out of the disengagement of the parties.

*Judgment affirmed in part and reversed in part. Andrews and Ruffin, JJ., concur.*

DECIDED MAY 28, 1999.

*Cofer, Beauchamp, Stradley & Hicks, Stanley A. Coburn, Calvin P. Jellema*, for appellants.

*Womble, Carlyle, Sandridge & Rice, Nisbet S. Kendrick III*, for appellees.