## A11A0848. ADAMS et al. v. D-MONEY ENTERPRISES, INC.
### (718 SE2d 870)

DOYLE, Judge.

D-Money Enterprises, Inc. ("D-Money") entered into a contract with Bobby J. Thomas in which D-Money agreed to build a daycare center on Thomas's property. D-Money subsequently filed suit against Thomas, asserting claims for breach of contract and quantum meruit. In the same action, D-Money also sued Dr. Ronald M. Adams and Dunbar Professional Group, Inc.[1] (collectively, "the Appellants"), alleging that they breached a financing agreement associated with the construction; D-Money also asserted a fraud claim against Adams and claims for quantum meruit and attorney fees against the Appellants. The parties filed cross-motions for summary judgment, and the trial court denied the Appellants' motion, granted D-Money's motion for summary judgment against Thomas, and granted D-Money's motion for partial summary judgment against the Appellants. The Appellants challenge the trial court's rulings on appeal. For the reasons that follow, we affirm in part, vacate in part, and remand.

> Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. OCGA § 9-11-56 (c). A de novo standard of review applies to an appeal from a grant of summary judgment, and we view the evidence, and all reasonable conclusions and inferences drawn from it, in the light most favorable to the nonmovant.[2]

So viewed, the record shows that D-Money, a contracting firm led by Desmond Brown, entered into a written agreement with Thomas, pursuant to which D-Money agreed to build a daycare center on Thomas's property in exchange for $684,832. D-Money alleged that shortly thereafter, D-Money "and/or" Brown entered

---

[1] Dunbar was a construction firm controlled by Adams.
[2] *Matjoulis v. Integon Gen. Ins. Corp.*, 226 Ga. App. 459 (1) (486 SE2d 684) (1997).

into an oral agreement, which was later reduced to writing,[3] with Dunbar whereby, in exchange for $27,393.28, Dunbar agreed to act as co-guarantor with D-Money on a loan from CB&T Bank of Middle Georgia ("the Bank") in the amount of $684,832 for the construction of the daycare center. The written Mutual Agreement further provided that Dunbar would "fund all construction draws" for the construction project and would

> be responsible for funding of payments, fees, payroll, sub-mitted invoices, receipts that pertain to monies owed from [D-Money] to subcontractors for labor satisfactorily per-formed and building supply companies for materials at the above[-]mentioned project turned in to be funded on only if passed by [the Bank].

Adams denied signing the Mutual Agreement, and Brown later conceded at deposition that Adams never signed it. Adams testified that he "refused to agree to enter into" the Mutual Agreement proposed by Brown and instead "informed Brown that draws would be paid only upon work satisfactorily performed with approval of [the] Bank."

On January 26, 2007, Dunbar submitted a construction loan application to the Bank for the purpose of constructing the daycare center on Thomas's property. In order to approve the loan, the Bank required a guaranty from Thomas, Brown, and a third person, Yolanda Franklin;[4] the guaranty executed by Thomas and Brown provided: "The Undersigned waives any claim, remedy[,] or other right which the Undersigned may now have or hereafter acquire against Borrower[, Dunbar,] . . . whether or not such claim, rem-edy[,] or right arises in equity, or under contract, statute, or common law." In consideration for the loan, the bank also required Thomas to execute a Hypothecation Security Agreement, along with a commer-cial deed granting the bank a security interest in the property. The subsequent loan agreement, which was for $684,832, provided that Dunbar agreed to apply the net proceeds of the loan to the construc-tion project and that Dunbar exercised control over the managerial decisions regarding the use of the loan funds.

Thereafter, the parties got into a disagreement regarding pay-ment to D-Money. According to Adams, Dunbar paid D-Money "for all work actually performed when requested. Dunbar . . . did not pay the draw requests from . . . Brown . . . that could not be supported by

---

[3] A copy of the unsigned "Mutual Agreement," which was dated January 26, 2007, was attached to D-Money's complaint as an exhibit.

[4] Franklin is not a party to this action.

sufficient evidence (i.e., invoices, canceled checks, receipts, etc., paid for supplies and/or laborers) as required by the [c]onstruction [a]greement." At some point, Adams, Brown, and Thomas met to discuss the issue, and Thomas instructed Adams not to pay any further amounts to Brown unless and until Brown could support the requests with documentation.

On June 13, 2007, D-Money recorded a materialman's lien in the amount of $164,603.88 against the property "for materials and labor furnished . . . prior hereto at the instance [sic] of" Thomas and Dunbar. In a subsequent affidavit, Brown testified that because the Appellants refused to pay the remaining $164,603.88 due under their agreement, D-Money "was forced to secure funding elsewhere" in order to complete the project, which had since been completed "pursuant to and in substantial conformity with [the construction contract with Thomas]." According to Adams, "there was not $164,603.88 left over from the construction loan proceeds" on the date that D-Money recorded the lien. Adams testified that after a subsequent accounting of the loan proceeds based on Dunbar's documentation, the remaining amount of the loan proceeds after all payments and disbursements was $123,683.70; after "additional expenditures" incurred by Dunbar,[5] the residual amount of remaining loan proceeds was $83,940.42.

On October 24, 2007, D-Money filed suit against Thomas and the Appellants, alleging five claims: (1) a breach of contract claim against Thomas arising out of their construction contract; (2) a breach of contract claim against Dunbar arising out of their financing agreement; (3) a fraud claim against Adams, alleging that he purposefully induced D-Money to enter into the financing agreement with no intention of complying with the terms thereof; (4) a quantum meruit claim against both Thomas and Dunbar alleging that in the absence of a contract, D-Money was entitled to recover the reasonable value of the services it rendered in connection with the construction project; and (5) a claim for attorney fees against Adams. Thomas asserted a cross-claim against the Appellants seeking indemnification for any liability pursuant to the construction contract, and the Appellants filed a counterclaim for interpleader, seeking to pay into the registry of the trial court the remaining $83,940.42 in loan proceeds.[6]

---

[5] The expenditures included, inter alia, the cost to secure a bond in accordance with the loan agreement with the bank and to secure permanent financing for the project.

[6] In their counterclaim, the Appellants stated that "[b]ecause of the competing claims between . . . Thomas and D-Money . . . , [they are] in genuine doubt as to the proper party entitled to receive the residual amount of the construction loan that is being held by [the Appellants]." Thus, the Appellants sought "in this [i]nterpleader action [to] be allowed to pay

The Appellants moved for partial summary judgment as to D-Money's breach of contract claim arising out of the alleged financing agreement, and the trial court denied the motion, finding issues of fact regarding the existence of a contract between D-Money and the Appellants, as well as fact issues regarding any breach thereof.

D-Money moved for summary judgment as to its breach of contract claim against Thomas, alleging that she had failed to pay him the full amount due despite his completion of the daycare center. The trial court granted D-Money's motion, entering judgment against Thomas in the amount of $164,603.88, finding that "[t]here is no genuine issue of material fact as to [Thomas's] breach of the contract and the amount of damages resulting from there." D-Money also moved for summary judgment "as to the ownership of certain construction loan funds held by [the Appellants]," and the trial court granted the motion and awarded partial summary judgment against the Appellants in the amount of $122,048.90.

1. The Appellants argue that the trial court erred by granting D-Money's motion for summary judgment as to his breach of contract claim against Thomas. The Appellants, however, do not have standing to appeal this order.

> [T]he grant of a motion for summary judgment in a multi-party case will not, standing alone, necessarily authorize the initiation of a direct appeal therefrom by any party to the underlying case. An appeal must be filed by one who has standing to pursue it. OCGA § 9-11-56 (h) gives a *losing* party the right to a direct appeal from an order granting summary judgment on any issue or as to any party even though the judgment is not final.[7]
>
> A co-defendant does not have any standing to appeal an order granting summary judgment in favor of another defendant when his right has not been adversely affected thereby. Only if the co-defendants are sued as joint tort[ ]feasors does the grant of summary judgment as to one potentially affect the other's right of contribution. There-

---

into the registry of the [c]ourt . . . the amount of $83,940.42, the actual amount of money that is left of the construction loan proceeds" and "[t]hat upon the payment into the registry of the [c]ourt of the amount that is left after payment of fees and additions [sic] expenses associated with the construction of [the daycare center], . . . Dunbar . . . be discharged and relieved of any further liability in the matter of any dispute by and between . . . Thomas and . . . Brown and D-Money. . . ."

[7] (Punctuation omitted; emphasis in original.) *Shackelford v. Green*, 180 Ga. App. 617, 618 (349 SE2d 781) (1986).

fore, it is only in this situation that the co-defendant is deemed a losing party and therefore has standing to appeal the grant of summary judgment to another co-defendant.[8]

Because the Appellants were not losing parties to the trial court's order granting summary judgment to D-Money as to its breach of contract claim against Thomas, and the Appellants were not sued as joint tortfeasors of Thomas, the Appellants have no standing to file a direct appeal of that order.

2. The Appellants filed a motion for partial summary judgment on D-Money's breach of contract claim, and the trial court denied the motion. The Appellants appeal this ruling, arguing that (a) the guaranty executed by Brown waived D-Money's claims against the Appellants; (b) there was no enforceable agreement between the Appellants and D-Money; and (c) they are entitled to summary judgment on D-Money's breach of contract claim because Brown breached his agreement with Thomas. These arguments are without merit.

(a) The Appellants contend that the guaranty executed by Brown waived D-Money's claims against them. This argument affords the Appellants no relief.

The guaranty was executed by Brown, not D-Money. The waiver specifically stated "[t]he *Undersigned* waived any claim, remedy[,] or other right which the *Undersigned* may have or hereafter acquire against Borrower . . . arising out of the creation or performance of Borrower's obligation of this guarantee. . . ."[9] Thus, notwithstanding the Appellants' arguments to the contrary, by the express terms of the guaranty, the waiver applies to *Brown*, and it affords the Appellants no relief as to *D-Money's* claims against them.[10]

(b) The Appellants maintain that there was no enforceable agreement between Dunbar and D-Money.

The Appellants do not deny that "Dunbar agreed with [D-Money] to obtain a loan for a certain amount for the purpose of constructing a daycare center on real property owned by defendant Thomas." They contend, however, that Dunbar agreed to disburse the loan proceeds in accordance with the construction loan documents required by the Bank and did not agree to do so in accordance

---

[8] (Citation and punctuation omitted.) *Hussey, Gay & Bell v. Ga. Ports Auth.*, 204 Ga. App. 504, 507 (4) (420 SE2d 50) (1992).

[9] (Emphasis supplied.)

[10] See *Porter Coatings v. Stein Steel &c. Co.*, 157 Ga. App. 260, 262 (3) (277 SE2d 272) (1981) ("No construction is required or even permissible when the language employed by the parties in their contract is plain, unambiguous, and capable of only one reasonable interpretation. . . . The language of the[ ] waiver[ ] is clear and unambiguous.") (citations and punctuation omitted).

542

with the Mutual Agreement, which Adams never signed. Regardless, the Appellants argue that even assuming that Dunbar agreed that the loan proceeds were to be disbursed in accordance with the written Mutual Agreement, the agreement constituted an unenforceable "agreement to agree." Although they cite case law for the general propositions that an agreement is of no effect unless the parties mutually agree to all essential terms and conditions[11] and that an agreement to agree is unenforceable,[12] the Appellants make no attempt to specify which essential terms and conditions are lacking, nor do they explain their bare contention that the agreement is an unenforceable agreement to agree.[13] By failing to do so, they have abandoned this argument.[14]

(c) The Appellants further argue that they are entitled to summary judgment because Brown[15] breached his alleged agreement with Thomas.[16] The Appellants fail to cite any authority for the proposition that Brown's or D-Money's purported breach of agreement with *Thomas*, a third party, somehow bars D-Money's claims against the Appellants under the doctrine of unclean hands, and we are aware of none. This enumeration is without merit.

Thus, the arguments of the Appellants provide no basis for reversal of the trial court's order denying their motion for partial summary judgment as to D-Money's breach of contract claim.

3. Finally, the Appellants contend that the trial court erred by granting partial summary judgment to D-Money.

D-Money filed a motion for partial summary judgment against the Appellants, reiterating that it had alleged claims for breach of contract, fraud, and quantum meruit, and seeking "a partial summary judgment in its favor as to the construction loan funds held by [the Appellants]." Specifically, D-Money sought a judgment in the amount of $83,940.42 (representing the amount held by the Appellants) plus $16,100 (the amount "improperly spent" by the Appellants), arguing that neither the Appellants nor Thomas claimed an

---

[11] See *Lake Tightsqueeze v. Chrysler First Financial Svcs. Corp.*, 210 Ga. App. 178, 179-180 (1) (435 SE2d 486) (1993).

[12] See *Peacock v. Chegwidden*, 238 Ga. App. 328, 332 (3) (518 SE2d 760) (1999).

[13] We note that the Mutual Agreement contains consideration and mutual promises.

[14] See *Dixon v. MARTA*, 242 Ga. App. 262, 266 (4) (529 SE2d 398) (2000) ("Rhetoric is not a substitute for cogent legal analysis, which is, at a minimum, a discussion of the appropriate law as applied to the relevant facts. As we have stated, appellate judges should not be expected to take pilgrimages into records in search of error without the compass of citation and argument.") (punctuation omitted).

[15] We note that Thomas's agreement was with D-Money, not Brown.

[16] In their brief, the Appellants argue that Brown breached his agreement with Thomas by receiving a commission for using particular materials in the building project without Thomas's knowledge and that Brown had conflicts of interest and was unable to secure financing.

interest in the funds at issue. Conceding that the Appellants had not actually executed the Mutual Agreement, D-Money argued that the parties mutually assented to the terms of the Agreement and that the Appellants partially performed pursuant to the terms of the Agreement.

The trial court granted D-Money's motion for partial summary judgment, concluding that

> there are no genuine issues of material fact and plaintiff is entitled [to] the judgment as a matter of law as the owner of certain monies held by . . . Adams and Dunbar . . . in the amount of $101,040.42, plus pre-judgment interest at the legal rate of 7% per annum that totals $21,008.48 for a total of $122,048.90; and . . . Adams and Dunbar . . . shall immediately release and turn over said funds they hold in the amount of $122,048.90 to the plaintiff consistent with this [o]rder.[17]

The basis for the grant of partial summary judgment is not clear from the trial court's order, nor is it clear which claims remain unadjudicated.[18] Although D-Money argues that the Appellants breached the Mutual Agreement, which they partially performed, the trial court did not specify that its award to D-Money was based on its breach of contract claim, nor does the order contain any analysis of the partial performance issues. To the extent that the trial court's judgment was based on a breach of contract claim, such a ruling would conflict with the trial court's previous ruling that "[w]hether [D-Money] and [the Appellants] had an agreement or contract is a fact issue[,] and the trier of fact must determine if a contract exists and, if so, whether it has been breached"; the subsequent order offers no basis for resolution of the apparent contradiction. Similarly, the parties fail to analyze the breach of contract issue (including partial performance) in any detail in their appellate briefs regarding this enumeration.[19] Further, it is not clear whether the trial court granted summary judgment to D-Money as to its claims against the Appellants, summary judgment to the Appel-

---

[17] Although not raised by the parties, we note that D-Money sought $83,940.42 plus $16,100, which totals $100,040.42, which figure appears inconsistent with the trial court's award of $101,040.42.

[18] In its brief in support of its motion for partial summary judgment, D-Money states that it "has numerous other claims, most of which involve disputed facts and will require determination by a jury."

[19] D-Money's brief addresses only the fact that neither the Appellants nor Thomas claims an interest in the funds retained by the Appellants, and it fails to address the basis for the trial court's award of money beyond that which the Appellants sought to interplead.

lants as to their counterclaim for interpleader, or both.[20]

Given the multiplicity of D-Money's claims, as well as the lack of a stated legal basis for the trial court's ruling, the apparent contradiction in the two summary judgment orders, and the parties' confusion on appeal regarding the trial court's ruling, we vacate the trial court's order and remand this case to the trial court for clarification.[21]

4. In light of our holding in Division 3, we need not address the Appellants' remaining enumerations.

*Judgment affirmed in part and vacated in part, and case remanded. Miller, P. J., and Ellington, J., concur.*

DECIDED NOVEMBER 15, 2011.

*Eric E. Wyatt*, for appellants.
*Martin Snow, Michael N. White, Clifton Boone*, for appellee.

---

[20] Indeed, D-Money's brief states that "[t]he trial court properly granted summary judgment to D-Money on [the Appellants'] interpleader counterclaim." If, in fact, the trial court solely granted summary judgment as to the interpleader counterclaim (without ruling that the Appellants breached the contract or that D-Money was entitled to relief under his claim for quantum meruit), such a ruling would be erroneous, given that the court awarded a sum greater than that which the Appellants sought to interplead.

[21] See, e.g., *City of Gainesville v. Dodd*, 275 Ga. 834, 839 (573 SE2d 369) (2002) (courts have discretion to apply the "right for any reason" rule); *Wilken Investments, LLC v. Plamondon, III*, 310 Ga. App. 146, 149 (712 SE2d 576) (2011) (vacating the judgment and remanding the case to the trial court for further clarification because this Court could not determine the grounds for granting the motion).